14

The State of Ohio, Appellee, *v.* Perryman, Appellant.

[Cite as State v. Perryman (1976), 49 Ohio St. 2d 14.]

(No. 76-583—Decided December 29, 1976.)

16

18

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Mr. Stephan M. Gabalac,* prosecuting attorney, and *Mr. Frederic L. Zuch,* for appellee.

*Mr. Parke G. Thompson* and *Mr. William F. Calhoun,* for appellant.

O'NEILL, C. J. Appellant presents 12 propositions of law.

### I.

In proposition of law No. 1, appellant claims the trial court violated his Sixth and Fourteenth Amendment rights in allowing in evidence inculpatory double hearsay statements.

At the trial the state called Edward Duvall, Jr., a detective of the Akron Police Department, as a witness. Duvall related a conversation between appellant and another police detective, Captain John Traub. Over appellant's objection, Duvall was permitted to testify that Traub informed appellant that his accomplices had been arrested, and both of them had identified him as the triggerman. Duvall also testified that after appellant was confronted with this statement, he "appeared nervous and hesitated, and then stated that he wished to have an attorney."

The trial court erred in admitting Duvall's account of Traub's experience. The accusatory statements of Traub, as testified through Duvall, are hearsay, and since Traub

and Pitts were not called as witnesses, the admission of these statements violated the defendant's Sixth Amendment right of confrontation. In effect, the state was permitted to put in the mouths of others (Traub and Pitts) not under oath statements to support and corroborate Richmond's incriminating testimony.

The question is, then, whether the trial court's error was harmless.

In *Schneble* v. *Florida* (1972), 405 U. S. 427, the United States Supreme Court, in dealing with a similar issue, stated:

"* * * In *Bruton*, the Court pointed out that '[a] defendant is entitled to a fair trial, but not a perfect one.' 391 U. S., at 135, quoting *Lutwak* v. *United States*, 344 U. S. 604, 619 (1953). Thus, unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. See *Chapman* v. *California*, 386 U. S. 18, 24 (1967). In this case, we conclude that the 'minds of an average jury' would not have found the state's case significantly less persuasive had the testimony as to * * * [the co-defendant's] admission been excluded. The admission into evidence of these statements, therefore, was at most harmless error." See, also, *Brown* v. *United States* (1973), 411 U. S. 223.

In reviewing the entire record, disregarding the objectionable portion of detective Duvall's testimony, this court finds the error constitutionally harmless. *Harrington* v. *California* (1969), 395 U. S. 250; *Chapman* v. *California* (1967), 386 U. S. 18; *Schneble* v. *Florida, supra.* Since the state's key witness, Richmond, provided sufficient evidence of appellant's participation in the murder, the detective's testimony was merely cumulative of other corroborating evidence properly before the jury.

This proposition of law is not well taken.

## II.

In his second proposition of law the appellant complains that the trial court erred in allowing the state to use, as incriminating evidence, the assertion of his constitutional right to remain silent.

As mentioned in the discussion of appellant's first proposition of law, detective Duvall testified that after Traub had informed appellant that his co-conspirators had identified him as the triggerman, appellant "appeared nervous and hesitated, and then stated he wished to have an attorney." Appellant claims this testimony an impermissible comment on his constitutional right to remain silent.

In Ohio, this issue was discussed in *State* v. *Stephens* (1970), 24 Ohio St. 2d 76, 263 N. E. 2d 773. Citing *Gillison* v. *United States* (1968), 399 F. 2d 586, this court noted, at page 80:

" 'The prosecution may not therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.' "

In further discussing the issue, the court stated, at pages 81 and 82:

"In the first detention of a suspect it is not uncommon to react by refusing to discuss the charges until a lawyer can be retained. Desire for friendly counsel and advice can be a major motivation at that time in the mind of one completely innocent of the charges, as well as one who subsequently may admit his guilt.

"His privilege at that time is silence. * * * he should not thereafter be penalized for his original refusal.
"* * *

"Prosecution references to that silence, or any inferences drawn therefrom, are not permissible *unless the record clearly demonstrates by the action and testimony of the defendant that he has waived the privilege previously asserted.*" (Emphasis added.)

This court does not find appellant's argument persuasive on the facts. At the time appellant was interrogated by detective Duvall, he had intelligently, knowingly, and voluntarily waived his *Miranda* constitutional rights. Having done so, it is inconsistent for him to say that his appearance and responses during the interrogation violated his Fifth and Sixth Amendment rights.

This argument is without merit.

### III.

As his proposition of law No. 3, appellant contends: "Photographic identification procedures are not to be employed when [a] suspect is in custody and a line-up is otherwise feasible unless [the] police can offer extenuating circumstances justifying [the] use of a photographic identification."

Other than Richmand, the only other identification witness to the crime, Michael Alldredge, was permitted to make an in-court identification of appellant and to testify as to a prior out-of-court identification. The identification occurred four months after the crime. Detectives Singleton and Oldaker went to the home of witness Alldredge and had him view six "mug shot" photos. Appellant's picture was among the photographs.

Although the photographs disclosed, at the bottom, the identifying number, date of arrest and height and weight of each individual photographed, witness Alldredge testified that he did not look at this information in his examination of the pictures. After viewing the photos for about five minutes, Alldredge selected the appellant's photo. At this time, the detectives informed him that appellant was one of the individuals previously arrested for this crime. Prior to that time, the detectives had not mentioned the photographs except for their earlier request to Alldredge that "they had some photographs that they wanted [him] to look at."

Appellant argues that this evidence of identification should have been withheld from the jury. As a matter of due process, appellant contends, photographic identification procedures should not be employed when a suspect is in custody and a line-up is otherwise feasible.

Although appellant cites no controlling authority for his proposition of law to this court, he does rely upon several state Supreme Court decisions so holding. *People* v. *Anderson* (1973), 389 Mich. 155, 186, 205 N. W. 2d 461; *People* v. *Williams* (1975), 60 Ill. 2d 1, 322 N. E. 2d 819; *State* v. *Nettles* (1972), 81 Wash. 2d 205, 500 P. 2d 752.

This court does not find the appellant's arguments

persuasive. The United States Supreme Court specifical-
ly approved the use of post-indictment photographic iden-
tification procedures in *United States* v. *Ash* (1973), 413
U. S. 300. In that case, following a thorough discussion
of the Sixth Amendment right to counsel and photographic
displays, the court reached the conclusion, at page 321,
that:

"We are not persuaded that the risks inherent in the
use of photographic displays are so pernicious that an
extraordinary system of safeguards is required.

"We hold, then, that the Sixth Amendment does not
grant the right to counsel at photographic displays con-
ducted by the Government for the purpose of allowing a
witness to attempt an identification of the offender."

Justice Stewart, in a concurring opinion, discussed the
advantages of a photographic display over a line-up, and
found, at page 324, that:

"A photographic identification is quite different
from a lineup, for there are substantially fewer possibili-
ties of impermissible suggestion when photographs are
used, and those unfair influences can be readily reconstruc-
ted at trial."

Appellant also suggests that the discrepancy between
the identifying witness' initial description of the mur-
derer and appellant's physical characteristics is so di-
verse as to render the witness' identification suspect. In
*Simmons* v. *United States* (1968), 390 U. S. 377, 384, the
United States Supreme Court established the following
standard for the manner in which photographic arrays
were to be conducted:

"* * * we hold that each case must be considered on
its own facts, and that convictions based on eyewitness
identification at trial following a pretrial identification by
photograph will be set aside on that ground only if the
photographic identification procedure was so impermissi-
bly suggestive as to give rise to a very substantial likeli-
hood of irreparable misidentification."

Reviewing the facts in the instant case, and applying
the test in *Simmons* v. *United States, supra,* this court re-

jects appellant's contention. The inconsistencies in Alldredge's testimony do not indicate an identification procedure so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Appellant's third proposition of law is not well taken.

### IV.

The next proposition of law, No. 4, advanced by appellant is that the verdict was manifestly against the weight of the evidence because the elements of robbery were not proven. Aggravated robbery is defined by R. C. 2911.01, as follows:

"(A) No person, in attempting or committing a theft offense as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1) Have a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;

"(2) Inflict, or attempt to inflict serious physical harm on another.

"(B) Whoever violates this section is guilty of aggravated robbery, a felony of the first degree."

The first requirement, appellant continues, is that one must either commit or attempt to commit a theft offense. The definition of a theft offense is found in R. C. 2913.02, which provides, in pertinent part:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

"(1) Without the consent of the owner or person authorized to give consent;

"* * * *

"(4) By threat."

Relying upon cases construing the language in the statutory predecessor to R. C. 2913.02,* appellant argues

---

*R. C. 2901.13, predecessor to R. C. 2913.02, provided:

"No person, while armed with a pistol, knife, or other dangerous

that in order to convict a person for a theft offense, the state must prove the defendant to have taken the property or services *from the person* of the victim, or from *his or her presence and immediate control*. *Turner* v. *State* (1853), 1 Ohio St. 422. Under such a requirement, appellant contends, the state failed to carry its burden of proof in proving all the material elements of aggravated robbery. Appellant concludes as follows:

"Both the state and the Court of Appeals' decision concede that the defendants never intended to take money *from the person* of the [decedent] or money which, as he stood in the parking lot of the Star Market, was under his immediate control or in his presence. Rather the alleged plan was just the opposite—to fully remove the victim from any control over the money by taking him to the laundromat and calling the supermarket, *i. e.*, a ransom if you will. * * * No reasonable interpretation of the facts could conclude that an aggravated robbery had occurred."

In relying upon a statute that was repealed with the enactment of the new Criminal Code in 1974, appellant's argument is not persuasive. Appellant planned to purposely deprive Busch of his property both without his consent and by way of threat. Through the anticipated kidnapping, appellant moreover conspired, and eventually attempted, to obtain or exert control over the property of Busch. Had he succeeded, the requirements of R. C. 2913.02(A) (1) and (4) would have been met. Thus, the evidence indicates that the appellant was guilty of an attempted theft offense.

Since the evidence indicates that appellant had a deadly weapon under his control and inflicted serious physical harm on another, the second requirement for aggravated robbery was also met.

---

weapon, or by force or violence, or by putting in fear, shall steal from the person of another anything of value.

"Whoever violates this section is guilty of armed robbery, and shall be imprisoned not less than ten nor more than twenty-five years, and he shall not have the benefit of probation."

Thus, there is sufficient evidence for the jury to find that the appellant was guilty of aggravated robbery.

This proposition of law is without merit.

## V.

Proposition No. 5 reads:

"Where the form of the general verdict and a specification, both within the same court, are identical in the indictment and charge to the jury and the jury returns patently inconsistent verdicts of 'guilty' and 'not guilty,' the general verdict must be set aside as inconsistent and repugnant."

In his fifth assignment of error, appellant argues the general verdict of guilty must be set aside as "patently inconsistent" with the verdict on an identical specification to that charge. The jury found appellant guilty of aggravated murder with a specification, and of aggravated robbery. The murder charge read as follows: "[The defendant and others] * * * did purposely, cause the death of Lawrence J. Bush [sic], while committing, attempting to commit, fleeing immediately after committing or attempting to commit aggravated robbery (R. C. 2911.01), said death being contrary to Ohio Revised Code 2903.01 (B), and further said cause of death being done under aggravated circumstances, to-wit: * * * [The] offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by said defendants, to wit: Aggravated Robbery 2911.01."

Specification two, of which the jury found appellant not guilty, reads as follows:

"The Grand Jurors further find and specify that the offense presented above, the killing of Lawrence J. Bush [sic] was committed while the said defendants were committing, attempting to commit, or fleeing immediately after committing or attempting to commit aggravated robbery 2911.01."

Appellant argues that there exists a clear inconsistency between the conviction under the general verdict, and the acquittal under the second specification. Under the

general verdict, the jury found that appellant had, in the progress of committing or attempting to commit aggravated robbery, purposely caused the death of Lawrence J. Busch. Under the second specification, the jury found that the appellant had not, in the progress of committing aggravated robbery, purposely killed the decedent. Consequently, appellant concludes, the general verdict of guilty as to count one must be reversed.

In allowing the verdict to stand, we believe the lower court committed no error. The death sentence in the instant case was based on a guilty verdict as to count one and a guilty verdict as to specification one. The sentence was not based on an alleged inconsistency. The guilty verdict for count one reflects the jury's determination that appellant was guilty of the felony-murder. The determinations rendered as to the respective specifications can not change that finding of guilt. Furthermore, as indicated in R. C. 2929.03(A), one may be convicted of aggravated murder, the principal charge, without a specification. Thus, the conviction of aggravated murder is not dependent upon findings for the specifications thereto. Specifications are considered after, and in addition to, the finding of guilt on the principal charge. If more than one specification is charged, a finding of guilty on only one such specification is all that is required in order for the court to render the death sentence.

## VI.

Proposition of law No. 6 reads:

"When the court * * * [responds] to a jury['s] inquiry that the defendant need not be a 'principal,' the jury must be further apprised that the state must prove beyond a reasonable doubt [that] someone else, identifiable, was the principal."

In its charge, the trial court instructed the jury on the offenses contained in the indictment. It also instructed that the defendant could be found guilty as an aider and abettor.

Since the aider-and-abettor option was before the jury, appellant argues that the court had an obligation to instruct

the jurors that if they found the appellant an aider and abettor to the killing of Busch, then they must further determine that some other identifiable person was the principal.

This proposition of law lacks merit. The state has a burden of proving each element of a crime beyond a reasonable doubt. Under an aider and abettor theory in a felony murder, the identity of the principal is not an element of the crime. Consequently, in order to convict an offender of complicity, the state need not establish the principal's identity. Pursuant to R. C. 2923.03(C), the state need only prove that a principal committed the offense.

### VII.

For his seventh proposition of law, the appellant proposes the following:

"When the defendant is ostensibly found guilty [as] an aider and abettor, mitigation under * * * [R. C. 2929.-04(B)] must include the mental states of both the principal and the aider. Further, the death penalty is a cruel and unusual punishment for an aider and abettor."

This argument is specious at best. No possible interpretation of this statute would support appellant's argument that the word "offender" must be interpreted as referring to both the principal and the aider and abettor. Neither does the statute require consideration of the principal's mental condition jointly and severally with the mental condition of the aider and abettor.

This argument is rejected.

### VIII.

Proposition of law No. 8 reads:

"In Ohio a bill of particulars limits and restricts the proof of the state * * * [to that] in the indictment and the particulars in the bill. A defense which merely refutes the indictment and bill can not constitute the basis for an aider and abettor charge."

During final arguments, the prosecutor suggested to the jury that the appellant could be held liable as an aider and abettor to the crime. Over appellant's objection, the court charged on aiding and abetting.

Appellant argues such a charge was prejudicial to his rights. Early in the trial, appellant had filed a motion for a bill of particulars. In response, the state had said that the appellant did shoot and kill one Lawrence J. Busch while attempting to commit aggravated robbery. Appellant argues that once the state particularized that the appellant himself had shot and killed Busch, it could not shift its theory of criminal responsibility. In short, appellant concludes that he had a right to be tried, not as an accomplice to the Busch homicide, but as the principal in the first degree.

This assignment of error is without merit. Upon an examination of the record, it is evident that the state consistently argued that the appellant was the triggerman. It was only on direct examination of defense witnesses that any evidence of aiding and abetting came before the jury. Since appellant presented evidence from which reasonable men could find him guilty as an aider and abettor, the court's instruction was, therefore, proper.

## IX.

Appellant's ninth proposition of law reads:

"Where the victim is killed by a richochet [sic] bullet, that fact establishes the reasonable basis for a charge on non-purposeful killing. Each shot must be evaluated as to the intent with which it was fired."

The appellant argues that the trial court erred by its refusal to charge on lesser included offenses, i. e., murder, voluntary manslaughter, and involuntary manslaughter. The basis of this argument is the fact that the fatal bullet ricocheted. Therefore, appellant argues that there was a reasonable basis for a charge on non-purposeful killing. Appellant would have this court hold that evidence that a bullet ricocheted negates a specific intent to kill. However, it was proven that two other shots were fired and entered the victim's body. It is a fundamental proposition that one intends the natural, reasonable and probable consequences of his acts. Certainly, when one discharges a deadly weapon aimed at an individual three times, it can not be said that death was not a natural and probable con-

sequence because one bullet missed, ricocheted and then killed the victim.

This proposition of law is without merit.

## X.

As his tenth proposition of law, appellant suggests:

"Identity, which is not an element of the crime, must also be proven beyond a reasonable doubt and the jury must be so charged by the trial court with sufficient separateness to apprise the jury of its independent consideration."

Appellant's contention is that the requested instruction, that appellant's identity must be established beyond a reasonable doubt, was improperly refused. The trial court determined that its general charge covered this question, and we agree with this determination. The court gave the following charge:

"* * * Before you can find the defendant guilty of aggravated murder, you must find beyond a reasonable doubt that Lawrence J. Busch was a living person, and that his death was caused by the defendant in Summit County, Ohio, on or about November 27, 1974."

It is the duty of the trial judge in a jury trial to state all matters of law necessary for the information of the jury in giving its verdict. R. C. 2945.11. As a rule of law, this court has established that "correct and pertinent" requests to charge must be given to the jury, either as specifically proposed, or within the substance of the general charge. *State* v. *Barron* (1960), 170 Ohio St. 267, 164 N. E. 2d 409. We believe the trial court's charge sufficiently conveyed the substance of the appellant's requested charge, and it was not error to refuse to give the requested instruction.

## XI.

"Where a material witness changes the path of the fatal bullet at trial (without anticipating of the same by the state, court, or the defense) and the defense was predicated upon reliance on the autopsy protocol so modified, a mistrial should be granted."

In his eleventh proposition of law, appellant argues he was prejudiced by an unanticipated change in the coroner's

testimony. At the time of the shooting, appellant was allegedly behind the victim and to his right. The autopsy report said the bullet traveled from left to right. At trial, the coroner corrected the report, testifying the bullet traveled from right to left. Because of this correction, appellant alleges unfair surprise. The coroner's testimony changing the path of the bullet, he argues, discredited the eyewitness' testimony concerning the position of the shooter, and this knowledge materially altered the defendant's defense.

Considering the evidence, this court believes that the change in the autopsy protocol did not materially affect the appellant's substantial rights under Crim. R. 33(A) so as to require a new trial. First, the coroner's testimony did not "discredit" Alldredge's account of the events. Alldredge never testified as to the exact position of the appellant and Busch. The last thing he observed before the shooting was Busch turning away from the car and beginning to walk away. Alldredge did not observe the shooting, nor the movements or travels of anyone after he himself had turned and walked towards his parked car, until the fleeing car almost hit him. Secondly, one can draw no conclusions as to the shooter's position from the path of the fatal bullet. The record indicates that the bullet ricocheted before entering Busch, and such a fact would allow for various distances and positionings.

Consequently, this argument is without merit.

## XII.

In his final proposition of law, appellant asserts:

"The Ohio death penalty statutes, specifically Sections 2929.03 and 2929.04 R. C. are arbitrary, capricious, unreasonable, and violate the Eighth and Fourteenth Amendments."

This proposition of law is without merit. *State* v. *Bayless* (1976), 48 Ohio St. 2d 73.

Accordingly, for the reasons stated, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.