OPINION
In the early morning hours of July 6, 1996, a man was found badly beaten and unconscious in a alley in Fremont, Ohio. His shoes were off his feet and his shirt pocket was torn. When he awoke from a coma ten days later, he could not recall any details about the beating or his assailants. He spent the next three to four months recovering from his injuries. He is expected to experience some long term decline in his overall cognitive abilities and permanent weakness on the right side of his body.
The victim, Charles Kent, had cashed his paycheck at a bar early on the morning of July 5, 1996 after completing work on a third shift. He and two co-workers spent the remainder of the day drinking beer at several locations. After leaving a party, the three drove to a tavern in Fremont. One of Kent's co-workers testified they arrived at the tavern at approximately 11:45 p.m., July 5, 1996. Kent decided to use a nearby "port-a-potty" while his two companions went into the tavern. When Kent failed to return to the tavern, his co-workers began looking for him. They could not find him and returned home. The next day they learned he had been hospitalized.
The Fremont police investigated the beating by canvassing the neighborhood where the victim was found. The police learned a "white man" had come to the door of a house approximately one hundred feet from where the victim was found while the occupants were having a fish fry. The witnesses indicated that appellant, Daryl Walker and two co-defendants, all African Americans, had chased the "white man" down the block and returned with cash. As a result, all three were indicted for aggravated robbery, in violation of R.C. 2911.01(A)(3), and felonious assault, in violation of R.C. 2903.11(A)(1). A jury convicted appellant of complicity to commit aggravated robbery and felonious assault. He was sentenced to a nine year prison term for the aggravated robbery and a six year prison term for the felonious assault. The sentences were ordered served consecutively. Appellant now appeals setting forth the following assignments of error.
 "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT INSTRUCTED THE JURY ON COMPLICITY UNDER R.C. 2923.03
SINCE THERE WAS INSUFFICIENT EVIDENCE TO WARRANT THE INSTRUCTION.
 II. THE VERDICT RENDERED BY THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
In his first assignment of error, appellant contends the trial court erred in instructing the jury on complicity.
Under Ohio law, the state may charge and try a defendant as a principal and, if the evidence at trial reasonably indicates the defendant was an aider or abettor rather than the principal offender, a jury instruction on complicity may be given. SeeState v. Perryman (1976), 49 Ohio St.2d 14, paragraph five of the syllabus, overruled on other grounds (1978), 438 U.S. 911,57 L. Ed. 2d 1156, 98 S.Ct. 3136; State v. Miller (Feb. 5, 1997), Summit App. No. 17776, unreported.
Appellant argues that the court erred in instructing the jury on complicity because the testimony shows that he was the principal offender. In support, appellant cites the testimony of eleven year old Reggie Heidelburg who testified that he saw appellant and two other men run after the victim. When the three men returned to the house, Heidelburg testified he heard appellant say he "punched [the victim] in the jaw." However, appellant ignores the testimony of thirteen year old Tommy Brown who testified he saw three men, including appellant, kicking the victim as he was laying on the ground. In that Brown's testimony indicates appellant was a complicitor, the court did not err in its instruction. Accordingly, appellant's first assignment of error is found not well-taken.
Appellant's second and final assignment of error contends the verdict was against the manifest weight of the evidence. Specifically, appellant attacks the credibility of witnesses, Reggie Heidelburg and Tommy Brown. Of the witnesses who claimed to be present at the "fish fry," only the two young boys offered testimony indicating appellant was involved in the beating.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982), 457 U.S. 31, 42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only if we conclude that the jury clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
We have thoroughly reviewed the record in this case. Finding no evidence that the jury lost its way or created a manifest miscarriage of justice, appellant's second assignment of error is found not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Sandusky County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.
JUDGMENT AFFIRMED.
 Melvin L. Resnick, J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.