OPINION
Appellant Gary Johnson appeals from his conviction in the Montgomery County Common Pleas Court of Aggravated Assault. Johnson contends in a single assignment of error that his conviction should be reversed and he should be accorded a new trial because the trial court erred in refusing to give his requested instruction on self-defense.
The facts underlying this appeal are set out in the defendant's brief and are supported by our review of the record. In the early morning hours of July 14, 1999, Kenneth Hussey was playing pool at Binger's Bar located at 142 E. Third St., in Dayton. After Hussey had won four or five games, Gary Johnson approached the table and said, "Come on, bet ten." Hussey won the game and demanded $10 from Johnson. Johnson replied that Hussey owed him $10 because "I betted that you would beat me." Hussey and Johnson then began arguing about the "bet." Hussey's wife, Beverly, tried to get him to let it go, but Hussey persisted and the "tension just kept rising." After a few minutes, Johnson went up the bar to get another drink. Hussey followed Johnson to the bar, telling his wife, "I'm not taken by him." The next thing she knew, a fight broke out between Hussey and Johnson near the bar.
Hussey testified that after the initial argument, Johnson went to the bar and sat down. A few moments later, Hussey went to the bar to get another drink, saw Johnson sitting there, and the two again exchanged words. According to Hussey, Johnson swung at him first and missed, Hussey struck back, and the two "got into a little hassle." Johnson, on the other hand, told Detective Dunsky that Hussey sucker-punched him and the two began to fight. Neither Beverly Hussey nor the bartender, Terry Isham, saw the fight start. Isham testified that he saw punches being thrown by both parties and ordered them to take it outside.
Outside the bar, Hussey and Johnson continued to fight, hitting and wrestling each other for 15 to 20 minutes. Eventually they both tired, shook hands, and Johnson commented to Hussey that he had won. Hussey then went back into the bar for more drinks, but was "still carrying on about the money." Moments later, Johnson went back into the bar and "the fight started all over again." Isham, the bartender, ordered both Hussey and Johnson to leave. After leaving the bar, Hussey's wife took him to Good Samaritan Hospital where he was treated for injuries sustained in the fight. At the hospital, a blood alcohol test revealed that Hussey's blood alcohol content was .324 milligrams per deciliter, or .275 percent.
Detective Gary Dunsky of the Dayton Police Department testified he interviewed Johnson about his version of the events leading to Hussey's injuries. Dunsky testified as follows:
 A. Well, he told me that he was at Binger's bar, that he had made a bet with Ken Hussey that he would lose a pool game. The bet was for $10. He said he won the bet because he lost. He said when Ken asked for some money to be paid, because he felt like he should be paid $10, Mr. Johnson said he wouldn't pay.
 At that point, Ken Hussey sucker punched him, the two of them began to fight. Gary Johnson said they fought in and out of the bar.
 At some point in time, there was a break in the fight. In the course of that break, Ken Hussey went back to the bar, was leaning against it. Mr. Johnson admitted to me he was mad because Hussey had sucker punched him. So he went at him again. Using those words, "I went at him again." Only this time, he said he had a pin that had been attached to his key chain. And he used that pin.
 He didn't — he said he really didn't know how many times he stuck Ken Hussey with the pin, but he also said had he had any other weapon he probably would have used that. But in this case, he had a pin. That's about it.
 Q. You mentioned that the defendant said there was a break in the fighting?
A. Yes.
 Q. Did he elaborate on what happened during that break?
 A. At that point, Ken Hussey went back to the bar. And he saw him leaning against the bar. He was huffing and puffing, I guess from exertion of being into the fight. That's when he said he, quote, "went at him again."
 Q. Did you ask the defendant where the pin was as he described it?
 A. I asked him where it was. He said he threw it away. I asked him to describe it for me because I was having a hard time visualizing. There's a lot of different things that could be considered a pin. He became evasive. He wouldn't elaborate further on what kind of pin it was, whether it was a safety pin or some other type of pin. (Tr. 196, 197).
(Emphasis ours).
The defendant did not testify in his own defense. The defendant presented the testimony of Larry Dehus, a forensic scientist, who testified that a person with a 0.275 blood alcohol would be significantly intoxicated and would have a significantly reduced sensation of pain.
Good Samaritan Hospital records were admitted in evidence during the defendant's case. The records indicate that Kenneth Hussey arrived at the hospital emergency room with multiple stab wounds to his back and abdomen. The records indicate the wounds may have been caused by an ice pick. Hussey was operated upon to remove blood from his abdominal cavity.
At the conclusion of the trial, the defendant requested that the trial court give the standard instruction on self-defense. The trial court sustained the State's objection to the requested instruction and explained its reasons for doing so.
 THE COURT: The Court's going to rule that self-defense will not be a jury instruction in this case. It is an affirmative defense that does require the defense to go forward with evidence of self-defense. And the burden of proving it by an affirmative — or by a preponderance, of course, is on the defendant. The elements of self-defense, number one, that the defendant was not fault in creating the situation giving rise to the altercation. Who threw the first blow would be a way to paraphrase that. And number two, the defendant had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself frm such danger was by the use of force.
 Both of those elements require at least some evidence on the part of the defense to entitle it a charge on self-defense. In the first element, about who threw the first punch, there really isn't any evidence of who threw the first punch or that the victim threw the first punch being established. Neither Miss Hussey, nor the bartender, Mr. Isham, could testify as to who threw the first punch at either fight.
 But the Court finds that after the parties shook hands and the matter seemed to be over outside, that there was a round two to this, and that's the essence of the State's charge and that what happened inside, once Mr. Hussey went in to order a couple of beers for the road, is the essence of this case. And there's no showing of any evidence that the victim was the aggressor or threw the first punch at that situation.
 So because there's not any evidence of that, the Court would decline to give a charge on self-defense.
 The second point is, element of self-defense, that the defendant had a reasonable ground to believe and an honest belief that he was in imminent danger of bodily harm and the only means to protect himself was the use of force. There really isn't any evidence there, keeping in mind that the defense has the burden of production on that element of an affirmative defense to show some evidence entitling the defense to the charge.
 And the Court finds that there isn't any evidence sufficient to warrant that charge on the second element of self-defense. So that will not be a part of jury instructions. The defense may not argue that since there is no affirmative defense of self-defense that the Court is going to charge the jury on.
The general rule in Ohio regarding special instructions in a criminal case is that if the requested instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge. State v. Perryman (1976), 49 Ohio St.2d 14, 29;State v. Boulabeiz (1994), 92 Ohio App.3d 238, 241. Thus, if there is sufficient evidence on the issue of self-defense in an aggravated assault case, the trial court must instruct the jury on self-defense. State v. Ervin (1991), 75 Ohio App.3d 275,279.
Self-defense is an affirmative defense, the burden of going forward with the evidence on the issue, and the burden of proof for the affirmative defense, rests entirely upon appellant. R.C.2901.05(A); See, State v. Pamer (1997), 80 Ohio St.3d 543,687 N.E.2d 685. The proper standard to determine if a jury should be instructed on an affirmative defense is whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue. Id. at 564, 687 N.E.2d at 703. To establish self-defense, appellant must show sufficient evidence that: (1) he was not at fault in creating the situation giving rise to the affray; (2) he has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) he must not have violated any duty to retreat or avoid the danger.Id. Appellant did not introduce sufficient evidence to warrant a jury instruction on self-defense.
We agree with the State that the record does not establish that the trial court erred in refusing to give the requested instruction. There was no evidence presented that the defendant entertained a bona fide belief that he was in imminent danger of great bodily harm when he returned to the bar and stabbed Kenneth Hussey repeatedly. Indeed, the defendant explained his actions as being motivated by anger, not fear.
The defendant's conduct was consistent with the charge specified in the indictment. The defendant, while in a sudden fit of rage brought on by serious provocation of his victim reasonably sufficient to incite him into using deadly force, knowingly caused serious physical harm to Kenneth Hussey. The assignment of error is overruled.
 __________________ BROGAN, J.
GRADY, P.J., and FAIN, J., concur.