[Cite as *State v. Wright*, 2013-Ohio-1424.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| V. | ) | CASE NO. 11-MA-14 |
| | ) | |
| RICHARD WRIGHT, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 10CR679

JUDGMENT: Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellee

Paul Gains
Prosecutor
Ralph M. Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant

J. Dean Carro
Director Legal Clinic
University of Akron
School of Law
Office of Appellate Review
Akron, Ohio 44325-2901

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: March 26, 2013

DONOFRIO, J.

{¶1}  Defendant-appellant, Richard Wright, appeals from a Mahoning County Common Pleas Court judgment convicting him of three counts of kidnapping and one count of felonious assault following a jury trial.

{¶2}  On June 20, 2010, Sharitta Pagett was at her apartment in Youngstown getting ready for church.  Appellant, who was Pagett's boyfriend at the time, was there with her. Pagett's cell phone rang and appellant answered it.

{¶3}  According to Pagett, appellant became angry when the caller turned out to be a man she had "messed around with" and he then broke her cell phone.  Pagett stated that appellant then started hitting and choking her.  The two went downstairs and Pagett stated that appellant put a gun in her mouth and threatened to kill her. Pagett stated appellant told her to get into his truck with him and that if she screamed, he would kill her. Pagett got into appellant's truck.  At one point, she stated appellant rolled down her window and fired the gun past her face and out the window.  Pagett stated appellant took her to a house on Youngstown's east side and the two got out of the truck.  Appellant told Pagett to shoot the gun and she fired it into the ground.  She then returned the gun to appellant and the two got back into the truck.  Appellant drove them back to Pagett's apartment.

{¶4}  Pagett stated that appellant had been drinking and was getting sick.  He went into her apartment and into her bedroom.  He then asked Pagett to get a pill from his truck.  Pagett went out and got the pill and then went across the street to seek her friend Theia's help.  Theia returned to Pagett's apartment with her.  Pagett brought appellant the pill and a glass of water.  She told him, "I can't do this no more," and he jumped out of bed.  Pagett stated that she ran from the apartment to another house and called 911.

{¶5}  A Mahoning County Grand Jury indicted appellant on one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2), and three counts of kidnapping, first-degree felonies in violation of R.C. 2905.01(A)(3), R.C. 2905.01(B)(1), and R.C. 2905.01(B)(2), respectively.  Each of the four counts also carried a firearm specification in violation of R.C. 2941.145(A).

{¶6} The matter proceeded to a jury trial. The jury found appellant guilty of all four counts but not guilty on all of the firearm specifications.

{¶7} The trial court subsequently sentenced appellant to two years for felonious assault and eight years on each of the three kidnapping counts. The court merged the sentences for the three kidnapping counts resulting in one eight-year sentence to be served consecutive to the two-year felonious assault sentence for a total of ten years in prison.

{¶8} Appellant filed a timely notice of appeal on January 28, 2011.

{¶9} Appellant raises two assignments of error, the first of which states:

THE TRIAL COURT COMMITTED PLAIN ERROR AND AFFECTED APPELLANT WRIGHT'S SUBSTANTIAL RIGHTS WHEN IT FAILED TO GIVE JURY INSTRUCTIONS ON THE FACTORS THAT MITIGATE FIRST-DEGREE KIDNAPPING TO SECOND-DEGREE KIDNAPPING UNDER R.C. 2905.01(C).

{¶10} Appellant argues here that the trial court committed plain error by failing to instruct the jury on second-degree kidnapping. He contends that because the evidence demonstrated that he released Pagett unharmed in a safe place, he was entitled to an instruction on second-degree kidnapping. Appellant asserts that he released Pagett when he asked her to go to his truck and get his medicine. He further asserts that the area outside of Pagett's apartment where he released her was a "safe place." And appellant claims that Pagett was unharmed because she had suffered no identifiable physical injuries. He argues that although Pagett testified that he hit and choked her, there was no evidence in the record that Pagett was actually injured. He notes that Officer Melvin Johnson did not notice any marks or bruising on Pagett that day when he interviewed her.

{¶11} Appellant failed to request a jury instruction on second-degree kidnapping. When an appellant fails to request a particular jury instruction, the failure to give the instruction is waived on appeal absent plain error. *State v. Lewis*, 7th

Dist. No. 01-CA-59, 2002-Ohio-5025, ¶46. To prevail on a claim governed by the plain error standard, an appellant must demonstrate that the trial outcome would have been clearly different but for the alleged error. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

**{¶12}** First-degree felony kidnapping under R.C. 2905.01(A) and (B) is reduced to second-degree felony kidnapping if the defendant "releases the victim in a safe place unharmed." R.C. 2905.01(C).

**{¶13}** The release of a victim unharmed is not an element of the kidnapping. *State v. Sanders*, 92 Ohio St.3d 245, 265, 750 N.E.2d 90, 2001-Ohio-189. And there is no requirement on the part of the state to allege or establish that the defendant failed to release the victim in a safe place unharmed in order to prove that the defendant is guilty of kidnapping. *State v. Leslie*, 14 Ohio App.3d 343, 345, 471 N.E.2d 503 (2d Dist.1984). Instead, the defendant must plead and prove it as an affirmative defense. *Sanders*, at 265. "If, at trial, the defendant puts forth any evidence tending to establish that the victim was released in a safe place unharmed, the court is required to submit this issue to the jury under proper instructions." *Leslie*, at 345.

**{¶14}** To determine if there was evidence that appellant released Pagett unharmed to a safe place, we must examine Pagett's testimony. Pagett's was the only testimony that was relevant to this issue.

**{¶15}** Pagett testified that on the morning in question, her cell phone rang and appellant answered it. (Tr. 282). Appellant became angry when he realized it was a man Pagett had "messed with" calling collect from the penitentiary. (Tr. 282). Appellant broke Pagett's phone and began to hit and choke her. (Tr. 282). The two went downstairs where appellant put a gun in Pagett's mouth and threatened to kill her. (Tr. 282-283). Appellant then told Pagett to get into his truck with him. (Tr. 283). He threatened to kill her if she screamed. (Tr. 283). While in the truck, appellant rolled down Pagett's window and shot the gun out the window past her face telling her he was going to kill her. (Tr. 284). Appellant drove to a house on the east

side of Youngstown. (Tr. 283-285). The two got out of the truck and appellant ordered Pagett to shoot his gun. (Tr. 285). She fired it once into the ground and gave it back to appellant. (Tr. 285). The two got back into the truck and appellant drove them back to Pagett's apartment. (Tr. 285).

{¶16} Pagett testified that after she and appellant returned to her apartment, they went inside and appellant got sick and threw up. (Tr. 285). He went into her upstairs bedroom, undressed and asked Pagett if she could go outside and get a pill out of his truck. (Tr. 285). Pagett went outside. (Tr. 285). She went to appellant's truck and retrieved the pill. (Tr. 301). She then ran across the street to her friend Theia's house. (Tr. 285-286, 301). Pagett asked Theia if she would help her. (Tr. 286). Theia agreed and the two went back to Pagett's apartment. (Tr. 286).

{¶17} Pagett then brought a glass of water upstairs to appellant. (Tr. 286). She told him, "I can't do this no more," and appellant jumped out of bed. (Tr. 286). Pagett ran down the stairs and out of the apartment. (Tr. 286). She ran to a neighbor's house where she first called a friend and then called 911. (Tr. 286). She stated that at the time, children were outside and neighbors were standing by their doors. (Tr. 293).

{¶18} Pagett's testimony demonstrates that once appellant returned Pagett to her apartment, he went to the upstairs bedroom and then "asked" Pagett to go outside to his truck to get a pill for him. Notably, appellant did not order Pagett to retrieve the pill nor did he threaten her if she refused to get the pill.

{¶19} When appellant asked Pagett to leave the apartment and go outside, he released her unharmed in a safe place.

{¶20} As to the release of the victim, it must be by the defendant's act, not by the victim seizing an opportunity to escape. See *State v. Bettem*, 7th Dist. No. 96-BA-39, 1999 WL 35296 (Jan. 15, 1999) (concluding that defendant failed to establish that he released his victims because the evidence demonstrated the victims escaped through a window "by their own efforts"); *State v. Carson*, 10th Dist. No. 98AP-784, 1999 WL 236095 (Apr. 22, 1999) (concluding that defendant left the victims "free and

unrestrained," and therefore released them, when he fled the scene). In this case, appellant left Pagett "free and unrestrained" when he asked her to go to his truck while he stayed upstairs, inside the apartment.

**{¶21}** As to leaving the victim "unharmed," psychological harm is not considered. For instance in *State v. Henderson*, 10th Dist. No. 85AP-830, 1986 WL 4366, (Apr. 8, 1986), the court concluded that the fact that the victim may be terrorized does not necessarily mean the victim was harmed. And it has been held that even where the defendant fires a gun as a warning shot, the victim is not "harmed." *State v. Steverson*, 10th Dist. No. 97AP11-1466, 1998 WL 634949 (Sept. 15, 1998). In the case at bar, while Pagett testified that appellant had hit and choked her, there was no evidence that she sustained any physical injuries resulting from her ordeal with appellant. And Officer Johnson, who responded to Pagett's 911 call, testified that Pagett had no visible red marks or bruising on her neck. (Tr. 359). Moreover, even though appellant fired the gun, he fired past Pagett.

**{¶22}** Finally, as to a "safe place," the parking lot of her own apartment building was a safe place for Pagett. She was in her own apartment parking lot, her friend Theia lived right across the street, children were outside, and neighbors were standing by their doors.

**{¶23}** Plaintiff-appellee, the State of Ohio, asserts that even if this court finds that the jury should have been instructed on second-degree kidnapping, the error would be harmless because, at most, only one of appellant's three kidnapping convictions would support a second-degree felony.

**{¶24}** But the state's argument presupposes the idea that appellant was convicted of three separate instances of kidnapping. The kidnapping began when appellant restrained Pagett at her apartment and did not end until he released her to go to his truck to retrieve his medicine. Appellant was charged with and convicted of first-degree kidnapping in violation of R.C. 2905.01(A)(3), R.C. 2905.01(B)(1), and R.C. 2905.01(B)(2). The defense to lower the degree to second-degree kidnapping applies to all of these counts. R.C. 2905.01(C)(1). And while appellant was

convicted of three counts of kidnapping, the trial court merged these convictions at sentencing "pursuant to Rule." Presumably, the trial court merged appellant's sentences pursuant to R.C. 2941.25, which only allows the court to merge the sentences when the counts are part of the same course of conduct and committed with the same animus, because his convictions were all part of the same course of conduct where he could only be convicted and sentenced on one count. Thus, the error here was not harmless.

{¶25} Had the jury been instructed on second-degree kidnapping there is a reasonable likelihood that they may have found appellant guilty of this lesser offense. Thus, appellant has established plain error here in the court's failure to instruct on second-degree kidnapping.

{¶26} Accordingly, appellant's first assignment of error has merit.

{¶27} Appellant's second assignment of error states:

THE TRIAL COURT ERRED WHEN IT ACCEPTED THE JURY'S INCONSISTENT VERDICT OF GUILTY TO FELONIOUS ASSAULT (R.C. 2903.11) AND NOT GUILTY TO THE FIREARM SPECIFICATION (R.C. 2941.145), IN CONFLICT WITH THE SUPREME COURT OF OHIO DECISION IN *STATE V. KOSS* (1990), 49 OHIO ST.3D 213.

{¶28} In this assignment of error, appellant argues the jury's verdicts were inconsistent. He contends the jury found that he knowingly caused serious physical harm by use of a dangerous ordnance (a gun) when they found him guilty of felonious assault but also found him not guilty of the accompanying firearm specification. Appellant notes that Pagett testified he fired a gun inches from her face and threatened her with the gun. He contends that for the jury to have found him guilty of felonious assault it had to believe Pagett's testimony. However, appellant argues that the jury's finding of not guilty on the firearm specification was logically inconsistent with its finding of guilty for felonious assault.

**{¶29}** As was the case with the first issue raised, appellant failed to object to this alleged error in the trial court. Therefore, we will review it for plain error.

**{¶30}** The jury found appellant guilty of felonious assault in violation of R.C. 2903.11(A)(2), which provides that no person shall knowingly "cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

**{¶31}** The jury also found appellant not guilty of the firearm specification in violation of R.C. 2941.145(A). As stated in the indictment, the firearm specification stated that appellant "had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm or used it to facilitate the offense."

**{¶32}** In support of his position, appellant relies on *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990). In *Koss*, the appellant argued the jury's verdict was inconsistent where it found her guilty of voluntary manslaughter but not guilty of the firearm specification. The Court noted that the evidence established the victim died of a gunshot wound to the head. *Id.* at 220. In light of that evidence, the Court found the jury's verdict that the appellant was guilty of voluntary manslaughter but not guilty of having "a firearm on or about her person or under her control while committing the offense" was inconsistent. *Id.* The Court further stated that because the jury had found the appellant not guilty of the firearm specification, the state could not retry the appellant on the specification on remand. *Id.*

**{¶33}** In spite of *Koss*, several appellate courts have relied on the older Ohio Supreme Court case of *State v. Perryman*, 49 Ohio St.2d 14, 358 N.E.2d 1040 (1976), vacated on other grounds by *Perryman v. Ohio*, 438 U.S. 911, 98 U.S. 3136 (1978), in finding that inconsistencies between the general verdict and a specification thereto did not warrant reversal.

**{¶34}** In *Perryman*, a case dealing with death penalty specifications, the Court held: "Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted

of a specification indicting him for identical behavior, the general verdict is not invalid." *Id.* at paragraph three of the syllabus. In so holding, the Court reasoned: "Specifications are considered after, and in addition to, the finding of guilt on the principal charge." *Id.* at 26.

**{¶35}** In relying on *Perryman's* reasoning, at least two courts have found that a guilty finding on a felonious assault charge and a not guilty finding on the accompanying firearm specification did not warrant reversal. See *State v. Harris*, 10th Dist. No. 03AP-206, 1993 WL 498019 (Dec. 2, 1993); *State v. Wilson*, 2d Dist. No. 2803, 1992 WL 15976 (Jan. 21, 1992). One court has also relied on *Perryman* in finding, "[v]erdicts that are logically inconsistent will not provide the basis for the reversal on appeal of a conviction that is supported by the manifest weight of the evidence." *State v. Parker*, 1st Dist. Nos. C-940097, C-94016, 1995 WL 238933 (Apr. 26, 1995).

**{¶36}** Despite these courts' rulings, the more persuasive view is to follow the more recent Ohio Supreme Court case law in *Koss*. What makes *Koss* more persuasive, in addition to its being the more current case, is that in the appellate court case of *State v. Koss*, 8th Dist. No. 54213, 1988 WL 88341 (Aug. 18, 1988), the appellate court specifically relied on the finding in *State v. Wiley*, 8th Dist. No. 51928, 1987 WL 8576 (Mar. 26, 1987), that "[W]here a jury convicts a defendant of a crime, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid." In support of this finding, both *Wiley* and *Koss*, 8th Dist. No. 54213, relied on *Perryman*. Thus, when the Ohio Supreme Court was faced with the issue in *Koss*, it had the appellate court's reliance on *Perryman* to consider. In finding the jury's verdict that the appellant was guilty of voluntary manslaughter but not guilty of having a firearm while committing the offense was inconsistent, the Court necessarily considered if *Perryman* dictated the opposite result and rejected this notion.

**{¶37}** Moreover, neither *Harris*, 10th Dist. No. 03AP-206, nor *Wilson*, 2d Dist. No. 2803, mentioned *Koss*, 49 Ohio St.3d 213, or attempted to reconcile their

findings with *Koss*.

**{¶38}** Finally, in order to find appellant guilty of felonious assault in this case, the jury had to necessarily find beyond a reasonable doubt that he knowingly caused or attempted to cause physical harm to Pagett *by means of a deadly weapon or dangerous ordnance*. This finding is clearly inconsistent with a not guilty finding on the firearm specification.

**{¶39}** Accordingly, appellant's second assignment of error has merit.

**{¶40}** For the reasons stated above, appellant's convictions are hereby reversed. The matter is remanded for a new trial on the felonious assault and kidnapping counts. As was the case in *Koss*, the state cannot re-try appellant on the firearm specifications as the jury acquitted him of those specifications.

Vukovich, J., concurs.

DeGenaro, P.J., dissents with attached dissenting opinion.

DeGENARO, P.J. dissenting.

**{¶41}** A jury instruction on second degree kidnapping was not warranted in light of the facts adduced at trial; Wright did not release the victim, she escaped. Further, inconsistency between the guilty verdict on the charge of felonious assault and the not guilty verdict for the accompanying firearm specification does not warrant reversal; it would merely preclude the State from retrying a defendant on the acquitted charge if a remand was ordered for any other count for another reason. Here, reversal is not warranted on either the kidnapping or felonious assault convictions, thus Wright's acquittal on the gun specification warrants no further relief. Accordingly the decision of the trial court should be affirmed.

### Jury Instruction and Kidnapping

**{¶42}** Richard Wright appeals from a jury verdict convicting him on three counts of kidnapping (R.C. 2905.01(A)(3), (B)(1), and (B)(2) respectively), first degree felonies, and felonious assault, R.C. 2903.11(A)(2), a second degree felony. Wright argues that the trial court committed plain error by failing to instruct the jury on

second degree kidnapping because the facts established that the victim, Sherita Padgett, was released in a safe place unharmed.

{¶43} Wright failed to object at trial to the trial court's omission of a jury instruction on second degree kidnapping. When an appellant fails to request a particular jury instruction the failure to give the instruction is waived on appeal absent plain error. *State v. Lewis*, 7th Dist. No. 01-CA-59, 2002-Ohio-5025, ¶46. Plain error should be invoked only to prevent a clear miscarriage of justice. *State v. Underwood*, 3 Ohio St.3d 12, 14, 444 N.E.2d 1332, 1334 (1983). Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804, 808 (1978). Here, there is no error, let alone plain error.

{¶44} Pursuant to R.C. 2905.01(C), kidnapping is ordinarily a first degree felony. However, if the victim was released in a safe place unharmed the offense is reduced to a second degree felony. It is not an element of the offense; rather, the accused must plead and prove it in the fashion of an affirmative defense. *State v. Cornute*, 64 Ohio App.2d 199, 201, 412 N.E.2d 416, 417 (10th Dist. 1979).

{¶45} "If, at trial, the defendant puts forth any evidence tending to establish that the victim was released in a safe place unharmed, the court is required to submit the issue to the jury under proper instructions." *State v. Leslie*, 14 Ohio App.3d 343, 345, 471 N.E.2d 503, 506 (2nd Dist. 1984). In *Leslie*, the Second District reviewed the record and found no evidence which would support a finding that the defendant released the victims in a safe place unharmed, concluding, " * * * it is uncontroverted that the defendant and both victims were still together in the victims' car when the defendant was finally stopped by police and arrested." *Id*. Likewise in this case, the evidence presented at trial established that Padgett was never released by Wright. At no time did Wright relinquish control over Padgett; she seized upon a second opportunity to escape, after she failed to avail herself of the first.

{¶46} The testimony of Sherita Padgett, Theia Wilson, Rochelle Mimms, and Roslyn Thomas demonstrate that Padgett escaped and was not released. The first

time Padgett left the apartment was at Wright's direction to retrieve medication from his vehicle; she was expected to return, and in fact she did return. When the opportunity to escape presented itself a second time, Padgett ran out of her apartment with Wright chasing her; she was seen running and looking back toward the direction of her apartment as she fled. These facts constitute an escape, not a voluntary release by Wright. As this court previously held, to establish the affirmative defense warranting a second degree kidnapping instruction, the release of the victim must be by the defendant's act, not by the victim seizing an opportunity to escape. *See State v. Bettem*, 7th Dist. No 96BA39, 1999 WL 35296, *7 (Jan. 15, 1999), where the victims escaped through a window by their own efforts.

{¶47} Further, evidence was presented by which the jury could find that Padgett was not left unharmed. After breaking her phone, Wright began hitting and choking Padgett. (Tr. 282). Additionally, Wright put a gun in Padgett's mouth and threatened to kill her. (Tr. 282-283). Later he drove Padgett to a location and shot a gun out the window past her face, again stating he was going to kill her. (Tr. 284).

{¶48} The majority contends that psychological harm is not considered when making the determination of whether the victim was released in a safe place unharmed; the fact that a victim may be terrorized does not necessarily mean the victim was harmed. *State v. Henderson*, 10th Dist. No. 85 AP-830, 1986 WL 4366 (Apr. 8, 1986). The majority further contends that it has been held that even where the defendant fires a gun as a warning shot, the victim is not harmed. *State v. Steverson*, 10th Dist. No 97APA11-1466, 1998 WL 634949 (Sept. 15, 1998). However, *Henderson* and *Steverson* are distinguishable from this case.

{¶49} In *Henderson*, the defendant-husband kidnapped his victim-wife outside of her workplace with a gun, and the ordeal lasted approximately three and a half hours until they were stopped by the highway patrol. The victim-wife testified that she was permitted on several occasions to leave the vehicle without Henderson being present with her. Because the record was lacking in any additional factors to establish harm, the Tenth District held that Henderson's use of the gun to create

anxiety or terror did not necessarily mean that the victim was harmed. In *Steverson*, the defendant and his accomplices robbed three victims sitting in a vehicle at gun point during a drug deal. Steverson had one of the victims throw the keys to the vehicle into a grassy area far from the car. Steverson and his accomplices returned to their car and one of the accomplices fired a shot into the air as they left the scene. The State conceded that the evidence supported Steverson's conviction for second degree kidnapping as the evidence established the victims were released, unharmed.

{¶50} Here, Padgett was subjected to a physical attack from Wright, coupled with threats of death and a gun shot in close proximity to her person. Based on these facts the jury could easily find Padgett to have been harmed by Wright. The record in the instant case does not demonstrate the trial court committed any error, let alone plain error, in refusing to charge the jury on second degree kidnapping. Accordingly, Wright's first assigned error is meritless.

### Inconsistent verdicts

{¶51} In his second assignment of error, Wright contends that his conviction for felonious assault must be reversed. He argues that an element of the offense was that he attempted to cause physical harm to Padgett by means of a deadly weapon; and given the not guilty verdict on the firearm specification, the jury found that element was not proven. Consequently, Wright believes that these verdicts are inconsistent and conflict with the decision in *State v. Koss,* 49 Ohio St.3d 213, 551 N.E.2d 970 (1990). *Koss* has limited precedential value here; the primary holding of that case is inapplicable, and the relevant portion offers little analysis and significantly, not the remedy Wright seeks.

{¶52} In *Koss*, the defendant-wife was convicted of voluntary manslaughter and acquitted on an accompanying gun specification, and raised the issues of the admissibility of battered woman syndrome and inconsistent jury verdicts on appeal. The Ohio Supreme Court held that battered woman syndrome had gained substantial scientific acceptance to warrant its admissibility into evidence, overruling previous case law to the contrary. Regarding Koss's argument that the voluntary

manslaughter conviction should be vacated because the jury's guilty verdict was inconsistent with an acquittal on the gun specification, the Court declined to do so; the entirety of the discussion of the issue is as follows:

> The record clearly establishes that the victim died of a gunshot wound to the head. Appellant testified at trial that she remembers observing the gun on the nightstand and reaching for it. Although she stated that she "must have picked" up the gun, she does not remember firing it. The gun was not positively identified as the murder weapon, but the bullets remaining in the gun were similar to the type of bullet used to kill the victim. In view of the evidence which demonstrates that the victim died of a gunshot wound, we must find that the jury's verdict that appellant was guilty of voluntary manslaughter but not guilty of having "a firearm on or about her person or under her control while committing the offense" is inconsistent. The jury not having found appellant guilty of the gun specification, the prosecution will not be permitted to retry her on the specification upon remand. (*Id.* at 219)

**{¶53}** A review of Ohio case law reveals that whether the alleged inconsistency is between multiple counts in an indictment or within a single count presents a distinction without a difference for analysis purposes. The instructive case regarding inconsistent jury verdicts among multiple counts is *State v. Adams,* 53 Ohio St.2d 223, 374 N.E.2d 137 (1978); reversed on other grounds. The Court discussed the issue and held:

> The general rule as to inconsistency in a verdict as between different counts of an indictment is expressed in the annotation in 18 A.L.R.3d 259, at page 274, where it is stated that " * * * consistency between the verdicts on the several counts of an indictment * * * is unnecessary where defendant is convicted on one or some counts but acquitted on

others, and the conviction will generally be upheld irrespective of its rational incompatibility with the acquittal."

The rule in Ohio, as expressed in *Griffin v. State*, 18 Ohio St. 438 (1868); *Browning v. State*, 120 Ohio St. 62, 165 N.E. 566 (1929); and *State v. McNicol*, 143 Ohio St. 39, 53 N.E.2d 808 (1944), is stated in paragraph four of the syllabus in Browning, as follows:

"The several counts of an indictment containing more than one count are not interdependent.  A verdict responding to a designated count will be construed in the light of the count designated, and no other.  An inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count."  *Adams*, *supra*, at 228.

**{¶54}** This case presents an alleged inconsistency between a general verdict and a specification.  Wright's argument stems from a conviction on one count of felonious assault and an acquittal on an attached firearm specification.  The instructive case on point regarding inconsistency within a single count is *State v. Perryman*, 49 Ohio St.2d 14, 358 N.E.2d 1040 (1976); vacated on other grounds.

**{¶55}** In *Perryman*, the defendant was convicted of aggravated murder but found not guilty on the death penalty specification which essentially charged Perryman with the same act as the primary offense, i.e. purposely causing the death of another during the commission of an aggravated robbery.  The Ohio Supreme Court held, "Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid."  *Id.* at syllabus. The Court reasoned:

The guilty verdict for count one reflects the jury's determination that appellant was guilty of the felony-murder.  The determinations rendered

as to the respective specifications can not [sic] change that finding of guilt. Furthermore, as indicated in R.C. 2929.03(A), one may be convicted of aggravated murder, the principal charge, without a specification. Thus, the conviction of aggravated murder is not dependent upon findings for the specifications thereto. Specifications are considered after, and in addition to, the finding of guilt on the principal charge. If more than one specification is charged, a finding of guilty on only one such specification is all that is required in order for the court to render the death sentence. (*Id.* at 26)

{¶56} This court and others have regularly held that inconsistencies between the general verdict and a specification thereto do not warrant reversal. *See State v. McQueen*, 7th Dist. No 86CA102, 1988 WL 70897 (June 30, 1988), citing the language of *Adams* and *Browning*, *supra*, reversal was not warranted where the defendant was convicted of aggravated robbery but acquitted on the accompanying gun specification; *State v. Allen*, 9th Dist. Nos, 4019, 4020, 1986 WL 9355, *3, (Aug. 27, 1986) affirming felonious assault conviction despite an acquittal on the firearm specification, noting that under R.C.2903.11 an individual can be convicted of felonious assault without being convicted of a specification because the charge stands independent from any specification; *State v. Henderson*, 11th Dist. No. 2010-T-0095, 2012-Ohio-740, upholding convictions for aggravated murder and murder despite not guilty verdicts on the accompanying firearm specifications, holding, "it is possible that the conflicting verdicts occurred as a result of a compromise or a sense of leniency." *Id* at ¶36.

{¶57} Finally, in *State v. Woodson*, 24 Ohio App.3d 143, 493 N.E.2d 1018 (10th Dist. 1985), the defendant was found guilty of aggravated robbery and not guilty on the firearm specification. Upholding Woodson's conviction, the Tenth District cited United States Supreme Court precedent holding, "It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and

then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Woodson*, citing *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471 (1984).

{¶58} Thus, whether the inconsistency is between multiple counts or a count and an attached specification, the analysis is the same. An evaluation of inconsistency between jury verdicts in either circumstance requires an appellate court to speculate into the minds and motivations behind jury deliberations, contrary to the great deference courts normally afford juries. Here, the jury returned a verdict of guilt on the felonious assault charge signifying the State met its burden beyond a reasonable doubt. An acquittal on the attached specification does nothing to invalidate the underlying conviction of felonious assault, rather, it could signal a compromise by the jury or leniency, deemed constitutionally sound in *Powell*.

{¶59} In conclusion, a jury instruction on second degree kidnapping was not warranted in light of the facts adduced at trial. Further, inconsistency between the guilty verdict on felonious assault and the not guilty verdict for the accompanying firearm specification does not warrant a reversal. Therefore the decision of the trial court should be affirmed.