OPINION
Appellant, Donald C. Hromulak, appeals from the Willoughby Municipal Court's judgment entry of March 23, 2000, finding him guilty of operating a vehicle while under the influence of alcohol in violation of Wickliffe Codified Ordinance 333.01(A)(1).
Appellant was stopped by Patrolman Dan Moreland ("Patrolman Moreland") on February 5, 2000, for running a red light. Appellant remained seated in his truck, and Patrolman Moreland approached the driver's side door. When he asked appellant for his driver's license, appellant admitted that he did not stop at the light, explaining that he was in a hurry to get to the Executive Den. During the course of this conversation, Patrolman Moreland detected an odor of alcohol on appellant's breath and asked him if he had been drinking. Appellant responded that he had consumed between four and six beers.
Acting upon this information, Patrolman Moreland decided to conduct a series of field sobriety tests. While appellant was still seated in his truck, Patrolman Moreland asked him to recite the alphabet. Appellant was unable to do so. Patrolman Moreland offered to let him try again, but appellant declined the offer. Patrolman Moreland next administered the one-leg stand test. He testified that appellant was unable to keep his right foot off the ground for more than one or two seconds at a time. He then asked appellant to perform the walk-and-turn test, which appellant also failed. Finally, Patrolman Moreland attempted to conduct the horizontal gaze nystagmus test while appellant was seated in his patrol car, but he was unable to complete the test due to the fact that he was seated in close proximity to appellant. At that time, he explained to appellant that he was under arrest for driving under the influence.
Appellant was taken to the police station where he was given a breath alcohol concentration test ("BAC test"). Appellant's BAC test results indicated that he had a breath alcohol concentration of .152, which exceeded the legal limit. Appellant was charged with violations of three Wickliffe Codified Ordinances: 333.01(A)(1), operating a vehicle while under the influence of alcohol; 333.01(A)(3), operating a vehicle with a concentration of .151 of one gram or more by weigh of alcohol per 210 liters of breath; and 313.01, disobeying a red traffic control device.
Appellant filed a motion to suppress on February 23, 2000. In his motion, he asked that all evidence arising from the stop of his vehicle be suppressed, including the observations of Patrolman Moreland, the results of the field sobriety tests, the results of the BAC test, and all statements of appellant. Appellant's motion was overruled in a March 14, 2000 judgment entry. Appellant subsequently entered a plea of no contest to the charge of driving under the influence, in violation of 333.01(A)(1). The trial court found appellant guilty of the charge and sentenced him pursuant to a March 23, 2000 judgment entry.[1]
Appellant has filed a timely appeal and raises the following assignments of error:
 "[1.] The trial court erred in overruling the motion to suppress the Breathalyzer results and its fruits in that the police did not have probable cause to arrest [appellant] for driving under the influence of alcohol; the acting judge's ruling was contrary to the evidence.
 "[2.] The Breathalyzer results should have been suppressed since the calibrating testing solution had been in use for ninety-two (92) days in violation of Ohio Department of Health Regulations (sic) 3701-53-04(A)(1).
 "[3.] The results of the Breathalyzer should have been suppressed since the police gave misleading information to [appellant], and therefore [appellant] did not validly consent to take the Breathalyzer.
 "[4.] The trial court erred in not suppressing or excluding [appellant's] exercise of his right to remain silent after receiving Miranda warnings."
 In his first assignment of error, appellant argues that Patrolman Moreland did not have probable cause to arrest him. We disagree.
A minor violation of a traffic regulation, if witnessed by a police officer, is sufficient to justify a stop for the purpose of issuing a citation. State v. Yemma (Aug. 9, 1996), Portage App. No. 95-P-0156, at 2, 1996 WL 495076. In this case, Patrolman Moreland saw appellant run a red light. Therefore, he was justified in making a stop.
Once a stop has been made, an officer may conduct an investigation into whether the detainee is driving under the influence if he has "a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated." Id. at 3. In the instant case, appellant admitted to drinking four to six beers. In addition, he failed two field sobriety tests, and was unable to recite the alphabet. Given these circumstances, Patrolman Moreland had probable cause to arrest appellant for driving under the influence of alcohol.
For the foregoing reasons, appellant's first assignment of error lacks merit.
In his second assignment of error, appellant propounds that his BAC test results should have been suppressed because the instrument check solution ("testing solution") used in validating the breath testing apparatus on which he was given his BAC test had been in use for ninety-two days in violation of Ohio Adm. Code 3701-53-04.
Ohio Adm. Code 3701-53-04(A)(1), provides that "[a]n instrument check solution shall not be used for more than three months after its date of first use." The breath-testing apparatus at issue was checked on February 2, 2000. The testing solution used on that date was from a batch that had first been used on November 3, 1999. Appellant suggests that since ninety-two days elapsed between the first use of the testing solution and the check run on February 2, 2000, the three-month limit on the use of testing solution, promulgated by the department of health in Ohio Adm. Code 3701-53-04, had been violated.
When a regulation is applied in a criminal case, it must be strictly construed against the state of Ohio. State v. Young (Apr. 11, 1991), Delaware App. No. 90-CA-40, unreported, at 2, 1991 WL 57176. In this case, the code section defines the period of use of the solution as "three months." We understand three months from the date of November 3, 1999, as being the calendar date of February 3, 2000. We hold that since the testing solution was last used on February 2, 2000, it was still within the parameters of the defined period of its usefulness contained in the administrative code section.
Appellant suggests that since months vary in length from twenty-eight to thirty-one days, this approach would undermine consistency, with testing solution being used from between eighty-nine and ninety-two days depending on the month in which it was first used. We see no difficulty with this result. There is no indication in Ohio Adm. Code 3701-53-04, or in any evidential material presented by appellant, that the testing solution is any less effective or accurate at ninety-two days than at eighty-nine days. In fact, the testing solution may well be effective for a year or more, but the department of health erred on the side of caution in limiting its use to three months.
Regardless, if the department of health had intended the solution to be used for only ninety days, it would have specified ninety days in the code section. The fact that the department of health is capable of such specificity is evident in Ohio Adm. Code 3701-53-04(A), which requires that an instrument check on evidential breath testing instruments be made every seven days. To avoid any confusion, one hundred and ninety-two hours is specified as the maximum time limit that may elapse between instrument checks. Therefore, we are confident in concluding that the department of health is capable of distinguishing between ninety days and three months, and consciously chose in Ohio Adm. Code 3710-53-04(A)(1) to require that testing solution not be used for more than three months.
In Mentor v. Kennell (1992), 83 Ohio App.3d 637, 640, this court held that strict interpretation of requirements that breath-testing instruments be calibrated every seven days means that the instruments "must be calibrated at least every one hundred and sixty-eight hours." We would note that a day is universally accepted as consisting of twenty-four hours. Therefore, a simple mathematical operation permitted this court to determine with great specificity the time period defined by the statutory language "every seven days." However, as appellant himself has noted in his brief, the length of a "month" can vary from twenty-eight to thirty-one days. Consequently, the term "month" cannot be calculated with the same exactitude, as "seven days," and an attempt to do so by this court would undermine the intent of the department of health in adopting three months as the appropriate length of time for the use of testing solution.
For the foregoing reasons, appellant's second assignment of error is without merit. In his third assignment of error, appellant contends that his consent to the BAC test was involuntary because Wickliffe police mislead him by indicating that his license would be suspended for only ninety days if his breath alcohol concentration exceeded the legal limit.
R.C. 4511.191(C)(1) provides that:
 "[a]ny person under arrest for operating a vehicle while under the influence of alcohol * * * shall be advised at a police station * * * of both of the following:
The consequences, as specified in division (E) of this section, of the person's refusal to submit upon request to a chemical test * * *;
The consequences, as specified in division (F) of this section, of the person's submission to the designated chemical test if the person is found to have a prohibited concentration of alcohol in the blood, breath, or urine."
 The Supreme Court of Ohio addressed the issue of the requirements for establishing a valid consent to a BAC test in Bryan v. Hudson (1997), 77 Ohio St.3d 376 . In Hudson, the appellant argued that his ALS suspension should be terminated because he was not informed by police of the consequences of taking, or refusing to take, a BAC test. Id. at 377. The Supreme Court held that "for purposes of establishing a valid consent or refusal to take a BAC test in the context of an administrative license suspension pursuant to R.C. 4511.191, the notice requirement of R.C. 4511.191(C) is satisfied by reading to the arrestee the language of R.C. 4511.191(C)(2)(b) as set forth on the top portion of BMV Form 2255." Id. at 378.
In the instant case, the relevant portion of BMV Form 2255 was read to appellant at the police station.[2] Appellant contends, however, that he was told by the police officers who booked him that since he had no prior BAC test refusals, and no prior convictions for prohibited concentration of alcohol, if he refused to take the test, his license would be suspended for one year, but that if he submitted to the test, and his BAC exceeded the legal limit, his license would be suspended for ninety days.
In referring to the possible license suspensions facing appellant in terms of either one year or ninety days, the police officers in question were citing the portion of BMV Form 2255 which refers to the administrative license suspension ("ALS"), independent of any other penalties or sanctions that appellant faced for refusing to take or failing a BAC test. Appellant alleges that he did not realize that he would be subject to penalties beyond the ALS. On this basis, appellant argues that the administering of the BAC test constituted an unreasonable search and seizure. We disagree.
Initially, we would note that, contrary to appellant's suggestion, the implied consent provisions of R.C. 4115.191(A) do not violate his Fourth Amendment rights to be free from unreasonable searches and seizures.State v. Starnes (1970), 21 Ohio St.2d 38, paragraph one of the syllabus. "Consequently, a chemical test administered in accordance with R.C. 4115.191 following arrest, pursuant to implied consent, does not constitute an unreasonable search and seizure." Twinsburg v. Lisch
(Feb. 9, 2000), Summit App. Nos. 19627 and 19628, unreported, at 5, 2000 WL 150755.
Further, with respect to appellant's argument that he was misled by the statements of the police officers into believing that his license would only be suspended for nintey days if he failed the BAC test, the officers in the instant case satisfied the notice requirement of R.C. 4511.191(C) when they read to appellant the language at the top of BMV Form 2255.Hudson, 77 Ohio St.3d at paragraph one of the syllabus.
In State v. Tino (Mar. 5, 1997), Hamilton App. Nos. C-960393, C-960394, and C-960395, unreported, at 1, 1997 WL 106339, the appellant claimed that he was confused when officers told him that if he failed the BAC test, he would be subject to a ninety-day license suspension. Relying on the holding in Hudson, the Tino court held that the appellant's consent to the breathalyzer test was valid since he had been read the required information. Tino, 1997 WL 106399 at 2. We are in accord with that analysis.
In the case sub judice, the officers read the relevant portion of BMV Form 2255 to appellant. The pertinent portion of the form states that: "[i]f you refuse to submit to the requested test or if you submit to the requested test and are found to have a prohibited concentration of alcohol in your blood, breath or urine, your driver's * * * license * * * immediately will be suspended for the period of time specified by law by the officer, on behalf of the Registrar of Motor Vehicles. * * * This suspension is independent of the penalties for the offense, and you may be subject to other penalties upon conviction." The ninety-day suspension for failing the breathalyzer test was the period of the administrative suspension identified on BMV Form 2255 applicable to appellant based on the information he provided the officers concerning his driving record. The fact that appellant was incapable of parsing the language of the form and, therefore, failed to recognize that he would be subject to penalties beyond the ninety-day administrative suspension, does not call into question the validity of his consent in submitting to the BAC test.
For the foregoing reasons, appellant's third assignment of error is without merit. In his fourth assignment of error, appellant argues that the fact that he exercised his Miranda rights, when officers asked him if he wanted to discuss the events surrounding his arrest should have been suppressed. We disagree.
Appellant is correct in his assertion that his constitutional right to remain silent may not be used against him. State v. Rowe (1993),92 Ohio App.3d 652, 670, citing Doyle v. Ohio (1976), 426 U.S. 610. Similarly, in State v. Perryman (1976), 49 Ohio St.2d 14, paragraph one of the syllabus, the Supreme Court of Ohio held that "[i]n the trial of a criminal case, evidence is not admissible which refers to a defendant's asserted silence during custodial interrogation, or to implications drawn therefrom, unless the record clearly demonstrates that the defendant has properly waived his privilege against self-incrimination." However, we would note that the rule in Perryman regulates the admissibility, at trial, of a defendant's assertion of his right to remain silent.
A motion to suppress is appropriate when the evidence is being suppressed "* * * on the ground that it was illegally obtained." Crim.R. 12(B)(3). "The purpose of a motion to suppress is to exclude evidence that has allegedly been obtained in violation of the defendant's constitutional rights." State v. Rohr (Dec. 30, 1998), Wayne App. No. 18908, unreported, at 4, 1999 WL 1819; State v. Stoll (May 24, 1999), Stark App. No. 1998CA00291, unreported, at 2, 1999 WL 333348. In this case, after being informed that he had failed his BAC test, appellant was asked if he wished to discuss the events leading to his arrest. Appellant declined. There is no indication from the record before this court that appellant's statement was illegally obtained. While his refusal to discuss the incident would not be admissible at trial if the state would attempt to have his invocation of his right to silence utilized as an inference of guilt, it was not a proper subject for a motion to suppress under the facts presented here. See Rohr, supra, unreported at 4.
For the foregoing reasons, appellant's fourth assignment of error lacks merit.
The judgment of the Willoughby Municipal Court is affirmed.
_____________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., NADER, J., concur.
[1] On February 17, 2000, the prosecutor sought a nolle prosequi on the violations of 333.01(A)(3) and 313.01. The request was granted in the March 23, 2000 judgment entry. A nunc pro tunc judgment entry was filed on January 16, 2001.
[2] The form states: "You now are under arrest for operating a vehicle while driving under the influence of alcohol * * * and will be requested by a police officer to submit to a chemical test to determine the concentration of alcohol * * * In (sic) your blood, breath or urine.
"If you refuse to submit to the requested test or if you submit to the requested test and are found to have a prohibited concentration of alcohol in your blood, breath, or urine, your driver's * * * license * * * immediately will be suspended for the period of time specified by law by the officer, on behalf of the Registrar of Motor Vehicles. You may appeal this suspension at your initial appearance before the court that hears the charges against you resulting from the arrest, and your initial appearance will be conducted no later than five days after the arrest. This suspension is independent of the penalties for the offense, and you may be subject to other penalties upon conviction.
"You may make an appeal of this suspension in court at the time of your initial appearance. Even though you may appeal this suspension, your driving privileges will be suspended.
"The law enforcement agency that employs the officer shall designate which test or tests shall be administered. You may, at your own expense, have a physician, registered nurse, qualified technician or chemist of your choosing administer a chemical test or tests in addition to any administered at the direction of a police officer."