OPINION
On April 6, 2000, Robert N. Dixon was indicted by a Franklin County grand jury on a single count of felonious assault, a felony of the second degree. The indictment also carried a specification alleging that he was a "repeat violent offender." The indictment arose as a result of a March 27, 2000 altercation with his wife, Cheryl Dixon, resulting in physical harm to her. Specifically, Mr. Dixon purportedly cut her with a knife, which required her to have stitches. Additional details of the incident are set forth below in our discussion of the assignment of error.
Following a jury trial in October 2000, Mr. Dixon was ultimately convicted on both the underlying charge and the specification. He was sentenced to a total of sixteen years of incarceration, consecutive to his remaining time to be served as a result of a parole violation.
Robert N. Dixon (hereinafter "appellant") has timely filed a direct appeal, assigning a single error for our consideration:
 The trial court erred when it failed to instruct the jury on the lesser-included offense of aggravated assault.
Preliminarily, we note that appellant erroneously refers to aggravated assault as a "lesser-included offense" of felonious assault. To be precise, aggravated assault, typically a fourth-degree felony, is an "offense of inferior degree" to the second-degree felonious assault. Stated simply, aggravated assault is the same conduct as felonious assault but its nature and penalty are mitigated by provocation. See, e.g., State v. Scott (Mar. 27, 2001), Franklin App. No. 00AP-868, unreported.
The record reveals no doubt that appellant caused physical harm to Cheryl Dixon. There also is no debate that appellant used a deadly weapon in causing the physical harm. The only issue before us is whether the trial court erred in essentially determining that the evidence adduced at trial supported only a jury instruction as to felonious assault, and not aggravated assault.
The elements of felonious assault are set forth in R.C. 2903.11(A), which reads, in pertinent part:
 (A) No person shall knowingly do either of the following:
(1) Cause serious physical harm to another * * *;
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance.
Aggravated assault is defined in R.C. 2903.12(A). That statute reads:
 (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
(1) Cause serious physical harm to another * * *;
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
As noted above, felonious assault usually is a felony of the second degree, punishable by incarceration for a term of 2, 3, 4, 5, 6, 7 or 8 years. Aggravated assault, typically a felony of the fourth degree, is punishable by a term of incarceration of 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 or 18 months.
As indicated by appellant's assignment of error, the trial judge refused to give the jury an instruction on aggravated assault, thereby eliminating any consideration of a possible provocation issue. The trial transcript, particularly appellant's testimony wherein he admitted harming his wife, unequivocally reveals that provocation was the heart of appellant's case.
For the most part, as discussed below, appellant and Cheryl Dixon gave two very different accounts about what happened before appellant cut his wife. Only in a few minor particulars do their stories concur. First, they agree that the attack occurred in their bedroom. They also agree that appellant was getting ready to leave right before he cut or stabbed her, and that he did leave immediately after the incident. The couple also agreed that they had had marital difficulties in the past.
Appellant and Ms. Dixon provided completely different stories about the reason appellant was upset when he stabbed her. She claimed appellant was upset because she refused to give him money and not for the reasons he stated under oath. She acknowledged that she and her husband had had disagreements about her male friends. Because Cheryl was a corrections officer, most of the people she worked with and around were males. She also acknowledged that she had let a former boyfriend use her address as his address for court purposes at about the same time appellant was being released on parole after serving a prison term for a prior manslaughter conviction.
Appellant testified that he became enraged after his wife took a telephone call from a male friend while they were in bed together. Appellant claimed that Cheryl told the man to call back later, after he (appellant) had left for work.
According to appellant, the argument escalated, and he prepared to take his possessions and leave. He became extremely enraged when his wife told him she was having sexual relations with another man. In the graphic, yet potentially significant words of his testimony:
Q: Exactly what did she say to you?
 A: Yeah. I got another man and he's fucking me good. [Tr. 107.]
Over defense counsel's vigorous objection, the trial judge refused to charge on aggravated assault because:
 I don't believe as a matter of law that it's a proper statement that a jury could find serious provocation occasioned by the victim that merely saying I engaged in [an] adulteress relationship can be serious provocation occasioned by the victim. I think as a matter of law that cannot happen.
* * *
 Construing the evidence most favorably to the defendant, I don't believe that any reasonable juror could determine the words used in this case is [sic] sufficient to give an instruction on the lesser[-]included offense [sic]. So I will not instruct on that. [Tr. 121, 132.]
Initially, we note the standard by which we are bound in reviewing claimed error with respect to jury instructions. In State v. Neal (Sept. 1, 1998), Franklin App. No. 97APA12-1676, unreported, this court stated:
 Jury instructions must be tailored to the facts of each case. "Obviously, only those instructions which are applicable to the facts of the case should be given." Avon Lake v. Anderson (1983), 10 Ohio App.3d 297, 299
* * *. It is well established that there must be sufficient evidence produced at trial before an instruction addressing such evidence is given. See, State v. Perryman (1976), 49 Ohio St.2d 14 * * *. In Renfro v. Black (1990), 52 Ohio St.3d 27, at 30 * * *, the court stated:
 "* * * [A] trial court has discretion whether to give a requested jury instruction based on the dispositive issues presented during trial. "`It is the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. * * *' Bostic v. Connor (1988), 37 Ohio St.3d 144, 147 * * *." [Emphasis added.]
In refusing to instruct the jury on aggravated assault, the trial judge alluded to some case law, without elaboration, and ultimately determined, essentially, that "words alone" were not sufficient here to warrant the requested instruction.
As the state observes, on May 13, 1992, the Supreme Court of Ohio decided two companion murder/voluntary manslaughter cases, both of which involve, inter alia, issues pertaining to jury instructions on lesser-included offenses and offenses of inferior degree. Since voluntary manslaughter is precisely the same "offense of inferior degree" to murder that aggravated assault is to felonious assault, the cases are analogous to the issue before us here.
In State v. Rhodes (1992), 63 Ohio St.3d 613, the Supreme Court held at the syllabus, in pertinent part:
 A defendant on trial for murder * * * bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under the influence or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, R.C. 2903.03(A), in order for the defendant to be convicted of voluntary manslaughter rather than murder * * *. (State v. Muscatello [1978], 55 Ohio St.2d 201 * * *, construed and modified.)
By its syllabus, Rhodes speaks only to the burden placed upon defendants tendering the mitigating circumstance of provocation, treating such burden essentially as an affirmative defense, in that appellant "bears the burden of persuading the fact finder" that he acted under the requisite provocation "in order to be convicted" of the offense. Id. (Emphasis added.) Thus, Rhodes extends the burdens placed upon such defendants; as Rhodes places the burden of persuasion upon them, the burden of production had already been placed upon such defendants pursuant to State v. Muscatello (1978), 55 Ohio St.2d 201.
The syllabus of Rhodes, however, does not speak directly to the entitlement to a jury instruction. A plain reading of the Rhodes syllabus presupposes that the fact finder had the opportunity to consider whether the defendant sufficiently proved mitigation.
In the companion case decided the same date, one of more import to the instant case, is State v. Shane (1992), 63 Ohio St.3d 630, the syllabus to which reads:
 1. Before giving a jury instruction on voluntary manslaughter in a murder case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction.
 2. Words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations. [Emphasis added.]
Preliminarily, the state prudently concedes that the Shane court expressly declined to adopt a "bright-line rule" that words alone are never sufficient provocation. Paragraph two of the syllabus says just that, by use of the limiting words "in most situations."
In Shane, at 632-633, the court acknowledges the rather muddied state of the law as to the issues to be addressed, and attempts to clarify the current status of the law:
 Past decisions of this court have sometimes given the erroneous impression that, whenever there is "some evidence" that a defendant in a murder prosecution may have acted in such a way as to satisfy the requirements of the voluntary manslaughter statute, an instruction on the inferior-degree offense of voluntary manslaughter must always be given. See, e.g., State v. Muscatello * * *. That clearly never has been the law in this state, nor is it the law today. The "some evidence" referred to in those cases is simply an abbreviated way of saying that a jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented which would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense. [Emphasis sic.]
In explaining the foregoing, the court's stated rationale is as follows:
 To require an instruction to be given to the jury every time "some evidence," however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to given an instruction on a lesser included (or inferior-degree) offense. Trial judges are frequently required to decide what lesser included (or inferior-degree) offenses must go to the jury and which must not. The jury would be unduly confused if it had to consider the option of guilty on a lesser included (or inferior-degree) offense when it could not reasonably return such a verdict. [Id. at 633; emphasis added.]
In addition to the original murder charge, counsel for Mr. Shane requested jury instructions on both voluntary manslaughter and involuntary manslaughter. Given the varied and somewhat conflicting instructions requested in the Shane case, a jury could have been "unduly confused" if given all of the jury instructions. For reasons more fully discussed below, the case before us is distinguishable in that respect; we do not believe that the jury here would have been confused, unduly or otherwise, if given the opportunity to assess appellant's credibility on the provocation issue.
Paragraph one of Shane directs that the first inquiry is one for the trial court: the court must make an initial determination whether there was "evidence of reasonably sufficient provocation" to warrant such an instruction. Accordingly, because this a question of law, we review it de novo.
Reviewing this issue de novo, we disagree with the trial judge. We believe the record contains the requisite evidence such that a reasonable juror could have found the sequence of events as related by appellant to amount to "serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." The "reasonableness" of the provocation is an issue for the factfinder, and this jury should have had the opportunity to consider it.
If appellant's testimony is believed, a series of provocations occurred one after another — all within a relatively short time. A male friend called while the couple was in bed. Cheryl Dixon told the man to call her back so they could talk after her husband left. Shortly thereafter, she threw her sexual infidelity in her husband's face with extremely graphic words which seemed calculated to provoke an angry response.
In the context of the particulars of this case, we believe the situation presented more than mere "words alone." Moreover, even if this were to be deemed a "words alone" scenario, paragraph two of the Shane syllabus expressly allows for such situations.
Our research of recent cases from this court applying Shane reveals no conflict with our disposition of the instant case. For instance, in cases affirming a trial court's decision not to give an instruction on a lesser charge, this court has rejected arguments where the accused had time to "cool off" and thus was not acting "suddenly" or "in a fit of rage," and, where the accused did not testify that he was even angry. See, e.g., State v. Steele (June 28, 2001), Franklin App. No. 00AP-499, unreported, and State v. Speakman (Sept. 28, 2000), Franklin App. No. 00AP-92, unreported.
Perhaps the jury here would have rejected appellant's testimony and, instead, found Cheryl's version of what occurred to be more believable. However, this jury was not even given the option to consider the issue of provocation. Based upon a careful review of the record before us, we find that the trial court erred in determining that, as a matter of law, appellant was not entitled to the requested jury instruction.
The assignment of error is sustained.
Having sustained the assignment of error, the judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.
 _______________ TYACK, J.
BRYANT, P.J., and PETREE, J., concur.