DECISION AND JUDGMENT ENTRY
Clifton J. Purvis appeals the divorce decree issued by the Adams County Court of Common Pleas, which awarded custody of his daughter, Ellen, to Carol A. Purvis. He first argues that the trial court erred in calculating Mrs. Purvis' income for purposes of child support. Because we find that the trial court did not abuse its discretion in relying on testimony regarding Mrs. Purvis' actual income rather than speculation as to her future income, we disagree. Mr. Purvis next argues that the trial court erred in calculating his income for purposes of child support. Because we find that only items that are allowed as deductions on a federal tax return may be added to the adjusted gross income of the parent, and because we find that cash expenditures in the parent's business may be subtracted from gross receipts to calculate self-generated income, we agree. Mr. Purvis next argues that the trial court erred in allocating parental rights and responsibilities. We disagree because we find: (1) that the trial court's failure to read the transcript of the magistrate's interview with Ellen was harmless; (2) that the trial court did not abuse its discretion in failing to personally interview Ellen; (3) the trial court was not required to appoint a guardian ad litem for an interview it did not intend to conduct; (4) the trial court did not act unreasonably in encouraging the parties to act in a responsible manner with regard to additional visitation; and (5) a substantial amount of competent and credible evidence supports the trial court's decision to designate Mrs. Purvis as Ellen's residential parent. Mr. Purvis also argues that the trial court erred in failing to order the parties to attend psychological counseling. Because we find that the trial court did not act in an unreasonable, arbitrary, or unconscionable manner, we disagree. Finally, Mr. Purvis argues that the trial court violated Civ.R. 53(E)(4)(c) in refusing to stay the magistrate's order. We agree that the trial court erred in failing to abide by the time restrictions of Civ.R. 53. However, we find the error harmless. Accordingly, we affirm in part and reverse in part the judgment of the trial court and remand this case to the trial court for the sole purpose of recalculating child support.
 I.
The parties married in 1984. Each party had a prior marriage with children born as a result. Mr. Purvis eventually adopted Mrs. Purvis' daughter, Nikki Purvis, from her previous marriage. Nikki was emancipated at the time of the divorce. The parties had one child, Ellen, during their marriage.
Mr. Purvis filed for divorce in January 1999. Mrs. Purvis counterclaimed for divorce. The parties agreed to a temporary order regarding custody of Ellen. Shortly after this agreed temporary custody order was filed, Mrs. Purvis sought to set it aside. The trial court declined to do so.
In January 2000, Mr. Purvis filed a request for shared parenting and a request for the trial court to interview Ellen. In February 2000, Mr. Purvis filed a written motion for counseling. The trial court denied this motion but encouraged the parties to obtain counseling.
The parties consented to an Agreed Judgment Entry, which granted them a divorce on the grounds of incompatibility. They further agreed on all matters except allocation of parental rights and responsibilities, child support, health care coverage, tax exemptions and tax credits.
The unresolved matters were tried to the magistrate. First, the magistrate interviewed Ellen in chambers. This interview was not entirely transcribed due to a malfunction in the recording equipment. The court reporter discovered the malfunction immediately following the interview and the magistrate read into the record the information not recorded. The recorded part of the interview included Ellen's statement that she wanted to live with her father. Ellen reasoned that her father can take care of her better than her mother can because her mother yells at her more than her father does. The magistrate indicated that during the time the tape had malfunctioned Ellen told the magistrate that her father had told her that if she went to live with her mother that she would be unable to see her father. The magistrate also indicated that Ellen had the ability to express complex thoughts and has a mature ability to express herself.
Mr. Purvis testified that he graduated from high school and attended some college. He married his first wife Debra Naylor in 1974. They had two sons, Mike and Jason. He worked in developing residential real estate. Mr. Purvis claimed that he was involved in parenting Mike and usually made him breakfast. In 1978, problems started to develop in his first marriage and he and Debra soon separated. Jason was born after the separation. Mr. Purvis met Mrs. Purvis in 1983, which precipitated his divorce from Naylor in 1984. Mr. Purvis testified that he watched Nikki while Mrs. Purvis worked at night. He made Nikki breakfast and bathed and entertained her. Mr. Purvis explained that after the family moved into the home that Mr. Purvis used to share with Debra, Mike, and Jason, Mrs. Purvis became jealous because it used to be Debra's house. Mr. Purvis adopted Nikki in 1985. He felt that they developed a father-daughter bond.
Mr. Purvis testified that he filed for bankruptcy in 1985 due to problems with rental properties he owned. From that point to the time of the trial, income from various partnerships was used only to pay the debts from the bankruptcy. Mr. Purvis worked different jobs and continued to help with Nikki. In 1992, Ellen was born and Mr. Purvis explained that even though Mrs. Purvis no longer worked outside the home, he took care of Ellen every night.
Mr. Purvis testified that he now helps Ellen with her schoolwork and wants her to continue to go to the private religious school that she attended at the time of the hearing. According to Mr. Purvis, Ellen does well at this school.
Mr. Purvis also claimed that he spent more time during the marriage with Ellen than Mrs. Purvis did, and that Mrs. Purvis told him that he would raise Ellen after they separated. He then testified in detail about his shared parenting plan. He explained that he wanted more time with Ellen than Mrs. Purvis because he has always spent more time with her. In this plan, Mr. Purvis proposed that neither party pay child support, but offered to pay for Ellen's private school tuition.
Mr. Purvis testified that he takes Ellen to his church every other Sunday. According to Mr. Purvis, Ellen decided in October that she wanted to be baptized. He did not invite Mrs. Purvis to this baptism.
Mr. Purvis discussed in detail his relationship with Anita Lewis. He explained that he started dating her in September 1998. He testified that Anita and Ellen get along well. He asserted that Ellen is more important to him than Anita. He testified that he is willing to follow the orders of the court and has no intentions of moving from the area. He opined that he and Mrs. Purvis could cooperate and make decisions about Ellen; however, on cross-examination he admitted that he had refused to alter the visitation schedule when Mrs. Purvis asked to reschedule due to a work-related conflict on her regularly scheduled day. Mr. Purvis reasoned that the parties should abide by the court order or go to court to change it.
Bill Christman, minister of Mr. Purvis' church, testified that Mr. Purvis brings Ellen to church every other weekend. He has observed Mr. Purvis be very "fatherly" with her. He visited Mr. Purvis' home after Mr. Purvis told him that Ellen wanted to be baptized. Christman met with Ellen about her decision and believed that Ellen made the decision to be baptized. He testified that he did not consider whether Mrs. Purvis supported Ellen's decision.
Joe Adray testified that he is Mrs. Purvis' supervisor at Family Recovery Services. He testified that although Mrs. Purvis works in Highland county, there is no residency requirement for her job. He also testified that Mrs. Purvis might have to go out of town for training but usually not any further than Columbus, Dayton, or Cincinnati. He testified that Mrs. Purvis has been dating a fellow employee.
Anita Lewis testified that she has had an ongoing relationship with Mr. Purvis and sees him about three or four times a week. She opined that Mr. Purvis has a good relationship with Ellen and that Ellen interacts well with her son. She has witnessed the visitation exchanges and stated that Mrs. Purvis has called Mr. Purvis names in front of Ellen.
Jason Purvis testified that he lost his relationship with his dad, Mr. Purvis, when his parents divorced. He explained that his brother Mike's trouble started when Mr. Purvis was not involved in his sons' lives. He also testified that Mr. Purvis helped Mike during his legal troubles.
Nikki Purvis testified that in November 1998, she remembered an incident between her and Mr. Purvis when she was eight years old. According to Nikki, Mr. Purvis told her that she could have a Popsicle only if she lifted her shirt and when she complied, he touched her breast. She said that she told her mom about this in 1998 because she was afraid for Ellen. She testified that until Ellen was three years old, her mom took care of everything and that until the current court-ordered schedule Mrs. Purvis was the primary provider for Ellen. She testified that she doesn't have a relationship with Mr. Purvis now and it would be hard on her relationship with Ellen if Mr. Purvis gets custody. She testified that Mr. Purvis was her "playmate" when she was young.
Carol Purvis testified that she is a social worker and plans to continue her education. She testified that she did not know that Mr. Purvis was still married when she began to date him and when she found out she stopped seeing him. Mrs. Purvis denied "browbeating" Nikki's biological father into giving his consent to her adoption. She admitted to pulling a gun on Mr. Purvis once, but claimed that she did so out of fear. She testified that she provided the majority of Nikki's day-to-day care. She also testified that until Ellen was three years old she was home with her and devoted her full attention to her. Once Ellen was three, Mrs. Purvis began to work and then go to college. She disputes Mr. Purvis' account that he spent more time with Ellen than she did. She denied ever planning to get a divorce when Ellen was two and planning to let Mr. Purvis take Ellen.
She testified that after Mr. Purvis left in June 1998, she took care of Ellen full time. She agreed to the temporary shared parenting plan because she was afraid of losing custody of Ellen. She testified that she and Mr. Purvis began going to a marriage counselor in the fall of 1998.
She explained that she should have sole custody of Ellen because she can give her more stability. She has a consistent work schedule and is home on weekends and holidays. She has been Ellen's primary caregiver. She testified that shared parenting has not worked well because Mr. Purvis would not communicate with her. She testified that Mr. Purvis did not inform her of Ellen's baptism and will not let her talk to Ellen when Ellen is with him.
Mrs. Purvis admitted to pushing Mr. Purvis during a visitation exchange. She testified that she did not have a problem encouraging Ellen to love, show affection for and spend time with Mr. Purvis.
Mrs. Purvis testified that she wants to move to Hillsboro because she works there and her car is wearing out driving forty miles each way to and from work. She said that Ellen can continue her Christian education at a school very similar to the one she is in now. She testified that Ellen would not have a hard time adjusting to a new school.
Charles Gorman, the executive director of Family Recovery Services, testified that within a few years, Mrs. Purvis will need a master's degree to continue working at Family Recovery Services. He also testified that Mrs. Purvis will soon be spending more of her work days in Hillsboro.
Mike Purvis testified to his felony record and other criminal record. He testified that he stopped visiting his dad because of problems between Mrs. Purvis and his mom and between Mrs. Purvis and himself.
After the parties filed post-trial briefs, the magistrate filed a decision on the allocation of parental rights and responsibilities. The magistrate found that Mrs. Purvis was a more reliable and probative witness. In rejecting Mr. Purvis' shared parenting plan, the magistrate found that the parties were and will remain unable to cooperate and make joint decisions regarding Ellen. The magistrate concluded after an application of the statutory factors that Ellen's best interests require that Mrs. Purvis be Ellen's residential parent. The magistrate ordered standard visitation with additional visitation "as Ellen may desire which is convenient and appropriate." The magistrate ordered Mr. Purvis to pay $651.44 per month in child support consistent with the child support worksheet attached to the decision. The magistrate ordered Mr. Purvis to obtain health insurance for Ellen. The trial court adopted the magistrate's decision.
Mr. Purvis filed objections to the magistrate's decision and a request for findings of fact and conclusions of law. He objected to the requirement that he provide health insurance for Ellen since Ellen can be covered by Mrs. Purvis' insurance through her employment at no charge to her. He also objected to the child support calculated by the magistrate and the custody determination. Mr. Purvis also filed a motion for reconsideration of the child support order and health care order and a request for the trial court to interview the minor child and appoint a guardian ad litem for Ellen.
Mr. Purvis also filed a motion to stay the magistrate's entry pursuant to Civ.R. 53. He alleged that Ellen knew of the magistrate's decision and had been having nightmares, and was scared and upset.
On August 4, 2000, the magistrate issued an amended decision on allocation of parental rights and responsibilities, which contained findings of fact and conclusions of law as requested by Mr. Purvis. The magistrate reversed its own prior decision about health insurance and ordered Mrs. Purvis to provide it.
The trial court overruled the remaining motions filed by Mr. Purvis. On August 15, 2000, the trial court adopted the magistrate's amended decision. On August 29, 2000, Mr. Purvis filed objections to the magistrate's amended decision. On October 23, 2000, the trial court overruled these objections. Mr. Purvis appeals and asserts the following assignments of error:
 I. The trial court erred to the prejudice of the appellant in its calculation of child support to be paid by him.
 II. The trial court erred to the prejudice of the appellant in failing to interview the minor child as requested by the appellant and by failing to have the interview which the minor child had with the magistrate transcribed so that he could review that for purposes of objections to the magistrate's decision and amended decision.
 III. The trial court erred to the prejudice of the appellant when it refused to stay the magistrate's decision and the court's entry and allowed its interim entry to extend beyond the time contemplated by the Ohio Rules of Civil Procedure.
 IV. The trial court erred to the prejudice of the appellant when it set forth an unworkable standard for additional visitation time with the minor child since it requires communication and cooperation with the appellee, which the magistrate found lacking.
 V. The trial court erred to the prejudice of the appellant in not ordering individual/family counseling for the parties in order that the parties better understand the dynamics of divorce and its impact upon children especially the minor child in this case.
 VI. The trial court erred to the prejudice of the appellant in not approving and adopting the shared parenting plan proposed by him.
 VII. The trial court erred to the prejudice of the appellant in designating the appellee as the residential parent and legal custodian of the minor child.
 II.
We first consider whether Mr. Purvis appealed a final appealable order. Mrs. Purvis argues that the trial court's entry overruling Mr. Purvis' objections to the magistrate's report is not final because the trial court reserved jurisdiction to re-visit the child support and visitation issues if the parties' circumstances change.
It is well established that an appellate court does not have jurisdiction to review an order that is not final and appealable. See Section 3(B)(2), Article IV of the Ohio Constitution; General Acc. Ins.Co. v. Insurance Co. of North America (1989), 44 Ohio St.3d 17; Noble v.Colwell (1989), 44 Ohio St.3d 92. When an action includes multiple claims or parties and an order disposes of fewer than all of the claims or rights and liabilities of fewer than all of the parties without certifying under Civ.R. 54(B) that there is no just cause for delay, the order is not final and appealable. Noble, supra; Jarrett v. DaytonOsteopathic Hosp., Inc. (1985), 20 Ohio St.3d 77. We must sua sponte
dismiss an appeal that is not from a final appealable order.Whitaker-Merrell v. Geupel Constr. Co. (1972), 29 Ohio St.2d 184.
Here, Mrs. Purvis asserts that because the trial court reserved jurisdiction to modify child support and visitation if the parties' circumstances change, the order is not final. Normally, when a trial court reserves ruling on an issue, the order is not final. See, e.g.,Ackley v. Ackley (June 18, 1993), Ross App. No. 92CA1924, unreported (no final appealable order when entry grants divorce but defers determination of child support and custody). However, here the trial court merely stated the current status of the law, that is, that a trial court that grants a divorce and allocates parental rights and responsibilities retains jurisdiction to modify them if circumstances change. R.C. 3109.04; R.C. 3119.33. Accordingly, we find that Mr. Purvis appealed a final appealable order.
 III.
In his first assignment of error, Mr. Purvis argues that the trial court erred in its calculation of child support by: (1) using Mrs. Purvis' 1999 tax return to figure her income; (2) including income used to pay off debts pursuant to a bankruptcy reorganization matter in Mr. Purvis' income for child support purposes; and (3) adding certain depreciation deductions to Mr. Purvis' Adjusted Gross Income from his 1998 tax return to determine his income for purposes of calculating child support.
An appellate court uses the abuse of discretion standard when reviewing matters concerning child support. Booth v. Booth (1989), 44 Ohio St.3d 142,144; State ex rel. Scioto Cty. Child Support Enforcement Agency v.Gardner (1996), 113 Ohio App.3d 46, 52. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. Id.;Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re Jane Doe I
(1991), 57 Ohio St.3d 135, citing Berk v. Matthews (1990),53 Ohio St.3d 161.
R.C. 3113.215 sets forth the procedures a trial court must follow when calculating a parent's support obligation.[1] Rock, at 110. R.C.3113.215(B)(1) requires the trial court's calculation to be made in accordance with the basic child support schedule set forth in R.C.3113.215(D), the applicable child support worksheet set forth in R.C.3113.215(E) or (F), as well as the other provisions of that section. The amount of child support calculated using the schedule and worksheet is presumed to be the correct amount of child support due. R.C. 3113.215(B)(1). The trial court may vary from this figure if it determines that the amount calculated under the schedule and worksheet would be unjust or inappropriate and would not be in the best interests of the children. R.C. 3113.215(B)(1)(a). Moreover, the trial court must state findings of fact that support its determination to vary from the scheduled amount. R.C. 3113.215(B)(1)(b).
 A.
Mr. Purvis first complains that the trial court erred in using Mrs. Purvis' 1999 tax return to figure her income because Mrs. Purvis testified that her income for 2000 was $24,876. He asserts that the magistrate should have used the most current income figure available in calculating child support. However, the hearing at which Mrs. Purvis testified took place in April 2000. Therefore, Mrs. Purvis testified about what she expected her income to be in 2000. We find that the trial court did not act unreasonably, unconscionably, or arbitrarily in relying on evidence of Mrs. Purvis' actual income, rather than her testimony regarding her expected income.
 B.
Mr. Purvis next complains that the trial court should not have included the income from certain partnerships in his income for purposes of child support because the partnership income is paying off the debts from his bankruptcy reorganization. He asserts that because this money is "earmarked" for debt repayment (i.e., the parties never received or used this money for living expenses during their marriage) and because it was generated by separate property, it should not be included. Mr. Purvis fails to cite any legal authority for this proposition.
"Income" for purposes of calculating child support means "for a parent who is employed to full capacity, the gross income of the parent." R.C.3113.215(A)(1)(a). "Gross Income" means "except as excluded in thisdivision, the total of all earned and unearned income from all sources
during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from * * * self-generated income." R.C. 3113.215(A)(2). "Self-generated income" means "gross receipts received by a parent from * * * joint ownership of a partnership * * * minus ordinary and necessary expenses incurred by the parent in generating gross receipts. * * *" R.C. 3113.215(A)(3).
R.C. 3113.215(A)(2) sets forth the exceptions to "gross income" and provides as follows:
* * *
"Gross income" does not include any of the following:
 (a) Benefits received from means-tested public assistance programs, including, but not limited to, Ohio works first; prevention, retention, and contingency; supplemental security income; food stamps; or disability assistance;
 (b) Benefits for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration that have not been distributed to the veteran who is the beneficiary of the benefits and that are in the possession of the United States department of veterans' affairs or veterans' administration;
 (c) Child support received for children who were not born or adopted during the marriage at issue;
 (d) Amounts paid for mandatory deductions from wages other than taxes, social security, or retirement in lieu of social security, including, but not limited to, union dues;
 (e) Nonrecurring or unsustainable income or cash flow items.
Because the partnership income is "self-generated income[,]" it is part of Mr. Purvis' "gross income." There is no exception in R.C. 3113.215(A)(2) either for income "earmarked" to pay debts pursuant to a bankruptcy order or for income from separate property. Accordingly, the trial court did not err in including the partnership income in its calculation of "income" for purposes of child support.
 C.
Finally, Mr. Purvis complains that the trial court erred by adding two depreciation deductions taken on his federal income tax form to his adjusted gross income to calculate his income for child support purposes.
First, he asserts that the trial court should not have added the "long term loss carry over of $20,712.80 from Schedule D." R.C. 3113.215(A)(4)(b) provides that "`ordinary and necessary expenses incurred in generating gross receipts' does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business." (Emphasis added).
Here, the magistrate added a long-term loss carryover of $20,712 to Mr. Purvis' adjusted gross income in determining his income for child support purposes. However, according to Schedule D of Mr. Purvis' 1040 tax return, he was not allowed a $20,712 deduction for this loss; rather, he was allowed to deduct only $1,500 for the loss. Accordingly, the magistrate erred by including a long-term loss carry over of $20,712; it should have added only $1,500.
Second, Mr. Purvis asserts that the trial court should not have added back in a $4,958.50 deduction, which was a cash expenditure in his farming business that was also used in a depreciation worksheet for his income tax return. R.C. 3113.215(A)(4)(a) allows for the subtraction of ordinary and necessary business expenses in calculating "self-generated income." "Ordinary and necessary expenses" are "actual cash items expended by the parent * * *." R.C. 3113.215(A)(4)(a).
Because the magistrate did not show exactly how it calculated Mr. Purvis' income for child support purposes, we normally would not be able to rule on this argument. However, because Mrs. Purvis does not dispute that the $4,958.50 amount was added back into the adjusted gross income of Mr. Purvis or that it was a cash expenditure for Mr. Purvis' farm, we assume these assertions to be true. Therefore, the trial court should have subtracted this expense from the gross receipts received by Mr. Purvis. See R.C. 3113.215(A)(3).
In sum, we find that the trial court did not err in calculating Mrs. Purvis' income, but erred in calculating Mr. Purvis' income. Therefore the trial court erred in determining the child support to be paid by Mr. Purvis.
 IV.
We combine our discussion of Mr. Purvis' second, fourth, sixth, and seventh assignments of error because they all concern the allocation of parental rights and responsibilities between the parties.
Decisions regarding the allocation of parental rights and responsibilities are within the trial court's sound discretion. Millerv. Miller (1988), 37 Ohio St.3d 71, 73-74; Bechtol v. Bechtol (1990),49 Ohio St.2d 21, 23. An abuse of discretion involves more than an error of judgment; it implies an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138;Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. Trickey v. Trickey (1952), 158 Ohio St. 9,13. Thus, an appellate court must be guided by a presumption that the findings of the trial court are correct, since the trial court is in the best position to view the witnesses and weigh the credibility of the proffered testimony. In re Jane Doe 1 at 138; Bechtol at 23.
 A.
In his second assignment of error, Mr. Purvis argues that the trial court erred by failing to (1) interview the parties' minor child, (2) have the magistrate's interview transcribed for review in determining objections to the magistrate's decision and amended decision, and (3) appoint a guardian ad litem for Ellen.
The trial court must make a record of any R.C. 3109.04 in camera
interview with a child. In re Markum (1990), 70 Ohio App.3d 841; See, also, Donovan v. Donovan (1996), 110 Ohio App.3d 615; Patton v. Patton
(1993), 87 Ohio App.3d 844. It is error for a trial court to fail to read the transcript of a magistrate's in camera interview with a child before adopting and approving the magistrate's report. Winters v. Winters (Feb. 24, 1994), Scioto App. No. 2112, unreported. However, such error may be harmless if it does not affect a substantial right of the parties. Id. citing Civ.R. 61. Here, the trial court's error in failing to have the interview transcribed so that it could read the transcript is harmless because the magistrate accurately summarized the transcript of its interview with Ellen in its decision.
Mr. Purvis has failed to show that the trial court's decision to rely on the magistrate's interview with Ellen is unreasonable, unconscionable, or arbitrary. The magistrate accurately summarized its interview with Ellen. Thus, the trial court did not abuse its discretion in deciding not to personally interview Ellen.
R.C. 3109.04(B)(2)(a) requires a trial court to appoint "a guardian adlitem upon the motion of a parent if the court intends to privately interview a child in a custody dispute." State ex rel. Papp v. James
(1994), 69 Ohio St.3d 373, 377.
Here, Mr. Purvis did not seek appointment of a guardian ad litem before the magistrate interviewed Ellen. Therefore, he waived any error in the trial court failing to appoint a guardian ad litem for the magistrate's interview. See Stores Realty v. Cleveland (1975), 41 Ohio St.2d 41, 43
(appellant waived argument that he did not make to the trial court);Lippy v. Society Natl. Bank (1993), 88 Ohio App.3d. Moreover, since the trial court did not intend to privately interview Ellen, it was not required to appoint a guardian ad litem. See R.C. 3109.04(B)(2)(a).
Therefore, we overrule Mr. Purvis' second assignment of error.
 B.
In his fourth assignment of error, Mr. Purvis argues that the trial court erred in ordering Mrs. Purvis to grant Mr. Purvis "additional visitation * * * as Ellen may desire which is convenient and appropriate" because the parties cannot communicate and cooperate. We again review the trial court's decision for an abuse of discretion. Miller at 73-74;Bechtol at 23.
While the trial court found that "the parties are now, and will remain in the future, unable to cooperate and make decisions jointly with respect to Ellen[,]" the trial court also found that Mrs. Purvis was more likely to honor and facilitate visitation and companionship rights. In granting additional visitation time, the trial court noted that it would "require some minimal cooperation between the parties but the court is hopeful that the parties will realize that Ellen will be a happier child as she can adjust somewhat her own schedule so that her needs are met." The trial court was faced with a difficult situation because the parties were unable to work together to do what was best for their child. The trial court did not act unreasonably, arbitrarily, or unconscionably in attempting to encourage the parties to act in a responsible manner with regards to additional visitation. Accordingly, we find that the trial court did not abuse its discretion in ordering additional visitation and overrule Mr. Purvis' fourth assignment of error.
 C.
We consider Mr. Purvis' sixth and seventh assignments of error together because they both concern the trial court's decision to designate Mrs. Purvis as Ellen's residential parent. In his sixth assignment of error, Mr. Purvis argues that the trial court erred in failing to adopt his shared parenting plan. In his seventh assignment of error, Mr. Purvis argues that the trial court erred in granting legal custody of Ellen to Mrs. Purvis. Because both of Mr. Purvis' arguments focus on the evidence admitted at the hearings, we construe these assignments of error as arguing that the trial court's designation of Mrs. Purvis is against the manifest weight of the evidence.[2]
When a parental rights award is supported by a substantial amount of credible and competent evidence, it will not be reversed as being against the manifest weight of the evidence. Bechtol at syllabus, followingTrickey, supra.
In allocating the parental rights of the parties, the trial court must take into account the best interests of the children. R.C. 3109.04(B)(1). In determining the best interests of the children, the trial court must consider all relevant factors, including, but not limited to, those listed in R.C. 3109.04(F)(1):
(a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, * * *;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
A trial court's allocation of parental rights may differ from the recommendation of a psychologist, as long as the record contains some evidence that supports the allocation decision. Frost v. Frost (1992),84 Ohio App.3d 699, 709; In re Ramey (Dec. 12, 1999), Washington App. Nos. 98CA4 98CA28, unreported; Cupp v. Cupp (Nov. 24, 1998), Allen App. No. 1-98-48, unreported.
In reviewing a trial court's allocation of parental rights and responsibilities, we do not re-weigh the best-interest factors to determine whether the trial court made the right decision. Rather, our review is limited to whether there is substantial credible, competent evidence supporting its decision.
The trial court found that (1) Mrs. Purvis was a more reliable and probative witness; (2) Mrs. Purvis has been Ellen's primary caregiver; (3) Mrs. Purvis will be more likely to honor and facilitate visitation and companionship rights; (4) Mr. Purvis has negatively influenced Ellen against Mrs. Purvis; (5) Mr. Purvis' dishonesty and deceit during his care of Ellen has harmed her; (6) Nikki Purvis was credible when she testified that Mr. Purvis induced her to show him her breasts when she was a child; (7) Ellen's articulated desire to live with her father was induced by her father's statement that she would never get to see her father if Ellen went to live with Mrs. Purvis; (8) the parties are unable to cooperate in decisions about Ellen and unable to encourage the sharing of love, affection and contact between the child and the other parent; (9) Ellen needs stability in the home without unnecessary movement between the parties' households. Thus, we find that there is substantial competent, credible evidence supporting the trial court's decision to designate Mrs. Purvis as the residential parent and to deny Mr. Purvis' proposed shared parenting plan. Accordingly, we overrule Mr. Purvis' sixth and seventh assignments of error.
 V.
In his fifth assignment of error, Mr. Purvis argues that the trial court erred in failing to order counseling for the parties. He asserts that because Dr. Smiley identified problems between the parties and recommended counseling, the trial court erred in failing to order such counseling.
We review matters relating to allocation of parental rights and responsibilities for an abuse of discretion. Miller at 73-74; Bechtol at 23. Mr. Purvis fails to cite to any legal authority for his arguments and fails to show that the trial court acted in an unreasonable, unconscionable, or arbitrary manner in declining to order the parties to attend counseling. Accordingly, we cannot find that the trial court abused its discretion in failing to order the parties to attend counseling, and we overrule Mr. Purvis' fifth assignment of error.
 VI.
In his third assignment of error, Mr. Purvis argues that the trial court erred in refusing to stay the magistrate's entry and its own entry approving of the magistrate's entry, thereby allowing the interim entry to extend beyond the time contemplated by Civ.R. 53(E)(4)(c).
Civ.R. 53(E)(4) provides:
 The court may adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties, but the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered. The court may make an interim order on the basis of a magistrate's decision without waiting for or ruling on timely objections by the parties where immediate relief is justified. An interim order shall not be subject to the automatic stay caused by the filing of timely objections. An interim order shall not extend more than twenty-eight days from the date of its entry unless, within that time and for good cause shown, the court extends the interim order for an additional twenty-eight days.
It is error for the trial court to fail to comply with the time limits of Civ.R 53(E). Jordan v. Jordan (June 6, 1996), Scioto App. No. 95CA2333, unreported (construing analogous former Civ.R. 53(E)(7)). However, such error may be harmless if it does not affect a substantial right of the parties. Civ.R. 61.
Here, the error is harmless, because the trial court eventually upheld the magistrate's decision, thereby continuing the interim order. Therefore, no substantial right of Mr. Purvis was affected. Accordingly, we overrule Mr. Purvis' third assignment of error.
 VII.
In sum, we overrule Mr. Purvis' first assignment of error in part and his second, third, fourth, fifth, sixth, and seventh assignments of error, and sustain his first assignment of error in part. Accordingly, we affirm in part and overrule in part the judgment of the trial court. We remand this case for the sole purpose of recalculation of child support.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and the cause remanded to the trial court for further proceedings consistent with this opinion and that costs herein be taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concur in Part and Dissent in Part with Opinion.
Evans, J.: Concur with Attached Concurring Opinion.
[1] This section has been re-codified as R.C. 3119.01. Because we apply the law in existence at the time of the proceedings below, we still refer to R.C. 3113.215.
[2] We note that Mr. Purvis argues in his brief that we should designate him as the residential parent. On appeal, our review is limited to determining whether the trial court's allocation of parental rights and responsibilities is an abuse of discretion or against the manifest weight of the evidence. We cannot substitute our judgment for that of the trial court. Therefore, at most, we can reverse the decision of the trial court and remand the issue to the trial court for a new decision.