[Cite as *State v. Percy*, 2025-Ohio-723.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| BRANDON PERCY | : | Case No. 2024 CA 0006 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Case No. 2022 CR 0702



JUDGMENT:      Affirmed



DATE OF JUDGMENT:      March 4, 2025



APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

MEGAN HOBART                          WILLIAM T. CRAMER
38 South Park Street                     1554 Polaris Parkway
Mansfield, OH  44902                    Suite 325
                                                      Columbus, OH  43240

*King, J.*

{¶ 1} Defendant-Appellant Brandon Percy appeals the August 17, 2023 judgment of conviction and sentence of the Richland County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶ 2} On October 6, 2022, the Richland County Grand Jury returned an indictment charging Percy as follows:

{¶ 3} Count one: Discharge of a firearm on or near prohibited premises with serious physical harm pursuant to R.C. 2923.162(A)(3), a felony of the first degree.

{¶ 4} Count two: Felonious assault with serious physical harm to B.H. pursuant to R.C. 2903.11(A)(1), a felony of the second degree.

{¶ 5} Count three: Felonious assault, attempting or causing serious physical harm by means of a deadly weapon to B.H. pursuant to R.C. 2903.11(A)(2), a felony of the second degree.

{¶ 6} Count four: Felonious assault, attempting or causing physical harm to S.C. by means of a deadly weapon pursuant to R.C. 2903.11(A)(2), a felony of the second degree.

{¶ 7} Count five: Felonious assault, attempting or causing physical harm to A.D. by means of a deadly weapon pursuant to R.C. 2903.11(A)(2), a felony of the second degree.

{¶ 8} Count six: Improperly handling firearms in a motor vehicle pursuant to R.C. 2923.16(B), a felony of the fourth degree.

{¶ 9} Count seven: Improperly handling firearms in a motor vehicle pursuant to R.C. 2923.16(A), a felony of the fourth degree.

{¶ 10} Counts one, two, three, four, five, and seven included firearm specifications.

{¶ 11} Percy pled not guilty to the charges and elected to proceed to a jury trial which took place July 13-26, 2023 wherein the following facts were elicited.

{¶ 12} This matter began following an argument between a group of older teens on Facebook on April 14, 2022. The cyber debate escalated when Dakota Price told B.H., a victim in this matter, to meet for a physical fight. Price directed B.H. to meet her at a park in Galion. Sabra Edwards drove herself, Percy, who was her best friend and roommate at the time, Price, Price's sister, Aaron Obenour, and Nautica Johnson to Galion. When B.H. failed to show, the group went back to Mansfield. Transcript of trial (T.) 916-917.

{¶ 13} Edwards went back to her house and changed cars. She exchanged her mother's car for her silver Chevy SUV and she and Percy went back to Price's home. T. 974.

{¶ 14} At some point the meeting spot to fight became the King's Mini Mart directly across the street from Price's home. The group then hung out on the stairs in front of Price's home. Present were Percy, Edwards, Johnson, Obenour, Price and members of her family.

{¶ 15} Meanwhile, B.H., her friend S.C. and 9-year-old A.D. were traveling to a Mansfield pet shop to purchase a hamster for A.D. Thereafter, they drove to King's Mini Mart, but instead of stopping, repeatedly drove by yelling at the group on the steps and taking photos. The third time they drove by, the group chased their car on foot. On the

following pass, the group threw things at their car. None of these people had ever met in person, but B.H. recognized two individuals from their Facebook profile pictures. T. 371-377.

{¶ 16} Before B.H.'s last pass, Percy and Edwards left for a few minutes, returned and pulled into the mini mart parking lot. Percy and Edwards had given Obenour and Johnson a ride to the Price home. When Obenour and Johnson saw Percy and Edwards return, they went across the street and got into the car for a ride home. Security video from the mini mart shows Edwards driving, the passenger seat empty, someone in the back seat opening the door from the inside, and Obenour and Johnson getting into the back seat. T. 549-556, 1314-1315, State's exhibit 11.

{¶ 17} Obenour, Johnson, and Percy were all initially in the back seat of the Chevy. When B.H. and S.C. drove by again, Edwards started chasing them. Percy said "I've got something for them." Obenour got in the front passenger seat about the same time. T. 556-559, 564.

{¶ 18} Initially, Percy, Obenour, and Johnson were just hanging out of the windows of the Chevy yelling at B.H. and S.C., but then Obenour and Johnson saw Percy pull a purple and black gun with an extended clip out of his waistband. Shots were fired from Edwards' Chevy which struck S.C.'s vehicle, B.H., and narrowly missed A.D. Edwards turned away from S.C.'s path of travel when she heard shots fired. When S.C. realized B.H. had been shot, she pulled over and called police. T. 377-378, 550, 768-776, 984-988, 1468

{¶ 19} B.H. was transported to a hospital where she underwent surgery to remove a bullet lodged in her colon. She lost half her colon, part of her small intestines, and endured a dangerous infection. T. 379-384.

{¶ 20} While all of that was happening, Percy's girlfriend, Haillie Schaub, was trying to contact Percy. Percy was usually prompt in responding to Schaub's texts, but had not responded for hours. The two used the smartphone application Life360 which allows users to track the location of others. Because Percy did not have cell phone data, his only worked when he could access wifi. When Percy finally responded to Schaub she asked why he went to Galion as she had seen his location there. Percy replied " we had to slide on some mfs baby, today been wild asf." Schaub understood "slide" to meant a negative meet up, "mfs" as mother fuckers and "asf" meaning as fuck. T. 714-719. Percy and Edwards then called Schuab at approximately 8:30 p.m. using Edwards' phone. They told Schuab they had to "slide" on some people because of an argument on Facebook between Edwards and a bunch of her friends. Percy got involved because Edwards was involved. Percy boasted about shooting 18-20 times out the window of the Chevy, said Johnson and Obenour were with them, and Edwards was driving. He struck Schaub as being excited about all of this. Edwards and Percy said they really did not want Obenour and Johnson in the car because they were afraid Johnson would say something. T. 718-727. Sometime before the events herein, Percy had purchased a gun – a purple and black SCCY 9-millimeter which he named Daphne – and asked Schaub if she wanted to learn to shoot. T. 708-709.

{¶ 21} Later that evening, Schaub sent Percy a news article about the shooting via Facebook Messenger. Percy sent a laugh emoji back. He then told Schaub he hid the

gun and he, Edwards' mother and Edwards hid Edwards' car in a neighbor's garage. T. 730-735, 743-744.

{¶ 22} An investigation onto the matter ensued. Initially B.H. could not tell officers what had happened. While hospitalized she heard rumors about what happened which she adopted as truthful, but different people told her different things. B.H. did recall she never saw a gun that day and could only see three people in the car, Johnson, Obenour, and Edwards. In one statement to police, she said Johnson and Obenour both shot her and that she did not see Percy in the car. In a second statement she included Percy as being in the car but was inconsistent as to whether or not he had a gun. T. 389-396, 447, 1328, 1335.

{¶ 23} S.C. also gave conflicting statements and testified on behalf of Percy at trial. On body camera footage from the scene, S.C. stated she saw a white guy with a bun and a black girl. This matches the description of Obenour and Johnson. She told police Obenour was driving, and maintained this assertion on direct examination. After being shown the security video from King's Mini Mart showing Obenour getting into the back seat she conceded she was wrong. She originally told police there were six people in the Chevy, that there was a black male with a red hoodie in the car, and she did not see the shooter. S.C. testified at trial that she saw a black female wearing a gray tank top and her hair in a bun hanging out the front passenger side window waiving a gun and yelling a lot, then heard shots. T. 1467-1479, 1489-1493,1502, 1506, 1508.

{¶ 24} Johnson stated Percy shot out the windows of the Chevy with a black and purple gun with a really long clip. She said she never touched the gun, but did not know

whether or not Obenour did. She stated everyone else in the car was "freaking out." T. 566-571, 575, 578.

{¶ 25} Obenour stated Percy did the shooting with a "purpleish" gun with a "25 clip." After the shooting, Obenour stated Edwards and Percy told them to "keep this between us." Obenour and Johnson later lied to police twice stating they jumped out of the car before any shooting started and then said two dark-skinned people were doing the shooting. T. 775-778, 795-797, 811, 832.

{¶ 26} McKenzie Cameron called police and advised Percy and Edwards had come to her house after the shooting. She stated Percy was bragging about the shooting and made it sound like it was fun, but Edwards was anxious and scared. She stated Percy asked Cameron's paramour for cotton swabs and Cameron saw Percy take apart a purple gun with an extended clip and use the swabs to clean it. T. 945-950.

{¶ 27} Edwards was also charged in this matter, but negotiated a plea in exchange for her testimony at trial. She stated Percy was the only person in the car with a gun and the gun was purple and black with an extended clip. She stated Percy was in the back seat and shot out of the rear driver's side a couple times. This panicked everyone else in the car and caused Johnson to start crying. Edwards stated she turned right so Percy would not have a shot, but that did not stop him. He pushed Johnson's head down and started shooting over her out of the rear passenger window. Edwards had seen Percy with the gun before. She also had messages from Percy which included a photo of the gun. Officers also discovered security video showing Percy and Edwards hiding the car. She stated Percy hid the purple gun, then later traded it for a revolver. T. 984-989, 991, 996-997, 1012, 1022, State's exhibit 37.

{¶ 28} The state requested and received a jury instruction for complicity as to all counts. After hearing the evidence and deliberating, the jury declined to find Percy guilty as the principal, but convicted him on all counts as complicit as well as each firearm specification. Percy was subsequently sentenced to 30-35 years incarceration.

{¶ 29} Percy filed an appeal and the matter is now before this court for review. He raises two assignments of error as follow:

I

{¶ 30} "APPELLANT'S STATE AND FEDERAL DUE PROCESS RIGHTS WERE VIOLATED BY CONVICTIONS ON A COMPLICITY THEORY THAT WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE OF AFFIRMATIVE ACTS TAKEN BY APPELLANT IN SUPPORT OF THE PRINCIPAL OFFENDER."

II

{¶ 31} "THE WEIGHT OF THE EVIDENCE DOES NOT SUPPORT APPELLANT'S CONVICTIONS ON A COMPLICITY THEORY BECAUSE THERE WAS NO EVIDENCE OF AFFIRMATIVE ACTS TAKEN BY APPELLANT IN SUPPORT OF THE PRINCIPAL OFFENDER."

I, II

{¶ 32} Because they are interrelated, we address Percy's assignments of error together. In these assignments of error, Percy does not challenge any one conviction or element. Instead, he advances a general argument that his convictions are against the manifest weight and sufficiency of the evidence. Specifically, Percy argues because the

state's evidence only painted to him as the principal offender he could not be convicted on a complicity theory as the state presented no evidence of complicit acts. We disagree.

Sufficiency and Manifest Weight

{¶ 33} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

{¶ 34} "Circumstantial evidence and direct evidence inherently possess the same probative value," *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus, because "[t]he intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be." *In re Washington*, 1998-Ohio-627, 340, quoting *State v. Huffman*, 131 Ohio St. 27 (1936), paragraph four of the syllabus.

Complicity

{¶ 35} R.C. 2923.03(A)(2) provides in pertinent part "no person, acting with the kind of culpability required for the commission of an offense shall . . . aid or abet another in committing the offense."

{¶ 36} Percy appears to argue that because the state presented evidence implicating him only as the principal, he cannot be convicted as an aider and abettor. However, "[a] complicity instruction is proper if 'the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor[.]' " *State v. Simpson*, 2013-Ohio-4276, ¶ 33 (9th Dist.), quoting *State v. Perryman*, 49 Ohio St.2d 14 (1976), paragraph five of the syllabus. Additionally, Percy does not challenge that instruction here on appeal.

{¶ 37} "[To] support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus.

{¶ 38} While the state need not establish the principal's identity, it must, at the very least, prove that a principal committed the offense. *State v. Perryman*, 49 Ohio St.2d 14 (1976), paragraph four of the syllabus vacated in part on other grounds sub nom, *Perryman v. Ohio*, 98 S.Ct. 3136 (1978); *State v. Hill*, 70 Ohio St.3d 25, 28 (1994). The state does not need to prove that the accomplice and principal had a specific plan to commit a crime. *State v. Johnson*, 93 Ohio St.3d 240, 245 (2001). The fact that the defendant shares the criminal intent of the principal may be inferred from the

circumstances surrounding the crime, which may include the defendant's presence, companionship, and conduct before and after the offense is committed. *Id.* at 245-246.

Analysis

{¶ 39} Contrary to Percy's argument, the state presented sufficient evidence to convict him on a complicity theory.

{¶ 40} While Percy argues the jury rejected the testimony of the state's witnesses and accepted the testimony of his witness, there is no evidence in the record to support such a conclusion. The evidence presented at trial was conflicting, including the testimony of Percy's witness. When assessing witness credibility, however, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120 (1986). Additionally, "the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *State v. Pizzulo*, 2010-Ohio-2048, ¶ 11 (11th Dist.). Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. *Id.* The finder of fact may take note of the inconsistencies and resolve or discount them accordingly, but such inconsistencies do not render defendant's conviction against the manifest weight of the evidence. *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236 (1996).

{¶ 41} There was no dispute between the parties that shots were fired from Edwards' Chevy into S.C.'s vehicle and some of those bullets struck B.H. The only dispute was who fired those shots. As set forth in our statement of facts, the State presented evidence from which a reasonable jury could find Percy supported, assisted, encouraged,

cooperated with, advised, or incited the principal in each crim charged. The State's evidence demonstrated he was involved in the events of April 14, 2022 from beginning to end. He rode with the others to Galion, was the only person who possessed a gun, stated he "had something" for B.H. and S.C. as the chase began, was present in the Edwards' vehicle during the shooting and did some shooting, hid the gun and later traded it for a different gun. He assisted in hiding Edwards' car after the fact, bragged about the shooting to his girlfriend and two other friends and seemed excited by the events. Percy's belated messages to Schaub indicating they "had to slide on some people" further solidify Percy's support, assistance, and encouragement in the car chase and shooting.

{¶ 42} Upon review of the record and transcript, we find Percy's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Accordingly, Percy's first and second assignments of error are overruled.

{¶ 43} The judgment of the Richland County Court of Common Pleas is affirmed.

By King, J.,

Baldwin, P.J. and

Hoffman, J. concur.